**L. Harvey POE, Jr., Appellant,**

v.

**Ben Paul NOBLE, Appellee.**

**No. 85–1652.**

District of Columbia Court of Appeals.

Argued Dec. 18, 1986.
Decided April 29, 1987.

Matthew S. Watson, Washington, D.C., for appellant.

Ben Paul Noble, Washington, D.C., pro se.

Before MACK, NEWMAN and ROGERS, Associate Judges.

ROGERS, Associate Judge:

At issue in this appeal is a Request for Approval of Compensation for Services of the personal representative and counsel to the estate. The question we must decide is how counsel may proceed if the Request submitted by the personal representative does not apportion the fees and counsel seeks an apportionment by the judge sitting in the Probate Division of the Superior Court.

At the conclusion of the administration of the estate of Reese Watkins Gordon under the jurisdiction of the Probate Division of the Superior Court, appellant L. Harvey Poe, Jr., the Personal Representative, filed a Request for Compensation for Services. The Request asked for $9,012.04 for the services of the Personal Representative and of the counsel to the estate, the law firm of Poe and Noble. Appellee Ben Paul Noble filed Exceptions to the Request in which he argued that he personally should be awarded attorney's fees of $8,000. The judge sitting in the Probate Division agreed, and awarded the remainder of the requested fee, $1,012.04, to Poe. On appeal, Poe contends that the judge lacked jurisdiction to make such an award and, in the alternative, that the apportionment of the fees was an abuse of discretion. We hold that the Probate judge had jurisdiction to treat Noble's Exception to the Request for Compensation as a motion seeking compliance with Probate Division Rule 124, but abused her discretion by failing to consider the statutory factors relevant to the apportionment of fees. Accordingly, we reverse and remand.

I

Reese Watkins Gordon died testate on July 15, 1983, leaving an estate worth approximately $71,000. In the will, appellant L. Harvey Poe, Jr., was designated to be the Personal Representative of the estate, and Poe qualified as such. Poe claimed to have been a close personal friend of Gordon for some time, and the record shows that Poe had been associated with another law firm at the time of the preparation of the will. Upon Gordon's death, Poe designated his new law firm, Poe and Noble, through appellee Ben Paul Noble, to be the attorney for the estate. Thereafter, services were provided to the estate by Poe, as personal representative, by Noble, as attorney, and by the support staff of the law firm of Poe and Noble.

Due to differences between Poe and Noble, irrelevant to the issues on appeal, the

law firm of Poe and Noble was dissolved during the administration of the estate. Both Poe and Noble continued providing services to the estate in their prior capacities.

At the conclusion of the administration, Poe filed a Request for Approval of Compensation for Services, which combined all of the services provided by himself, Noble, and their support staff as services provided by the law firm of Poe and Noble. Poe requested total compensation of $9,012.04, which represented approximately 12.6% of the $71,000 estate. Poe further stated that, "since the Personal Representative and his Attorney have agreed the Estate is a firm client of Poe & Noble, it does not matter how the compensation is divided between them." The Request further represented that Poe had spent 104.5 hours on the administration of the estate and that Noble had spent 137.4 hours on legal problems and the administration of the estate.[1] Although representing that the ordinary fee of both the representative and the attorney was $125 per hour, the Request asked only for an aggregate fee of $9,500 in view of the small size of the estate.[2] Law clerk time of 124.4 hours and paralegal time of 36.2 hours, although routinely billable at $35 per hour, were also included at their actual cost of $10 per hour and added to other disbursements for a total of $1,869.84. These two figures were balanced against an earlier payment of $2,357.80 to arrive at a final requested figure of $9,012.04.

Noble verified "under penalty of law that the contents of the foregoing document with respect to services rendered by me or my firm are true and correct to the best of my knowledge, information and belief."[3] D.C.Code § 20–102(b) (1981). Nonetheless, he subsequently filed, pursuant to D.C. Code §§ 20–751(e) and –752 (1981), Exceptions to the Request for Compensation for Services, which requested compensation for 137.4 hours of service at the rate of $58.40 per hour for a total of $8,000.[4] He further stated that he had no actual knowledge of the services rendered by Poe, that he had performed all services pertaining to the litigation, that there was no agreement between Poe and Noble on the division of the fees, that the estate fees were part of a longstanding dispute between Poe and Noble, and that he "became aware of the possibility that the Personal Representative might duplicate services."

A hearing was held on October 30, 1985. Noble testified that he had done all of the litigation work and that he could not testify as to the work done by Poe. He admitted that he and Poe had worked together in a firm, albeit not as partners, and that they had secured a $5,000 loan to cover expenses after the dissolution of that firm. The Probate judge proceeded on the understanding that

> Mr. Noble's exception is simply to apportion that part of the request for services that was done by himself and not to issue

1. The administration of the estate was complicated because the only named beneficiary, Gordon's wife, had predeceased her husband, there was no easily accessible information about his next of kin, it involved litigated questions as to the rights of an adult child born out of wedlock, and because Poe found it necessary to obtain a judgment against an unavailable real estate agent who allegedly retained rent from the decedent's home.

2. In a Supplement to the Request for Compensation for Services, Poe stated that Gordon "was a friend of mine for a number of years and I suggested the above fee as one that would meet the Personal Representative's determination to carry out his obligation to the deceased in a fair and responsible manner." There is no other suggestion in the record that Poe intended anything more than to do a good job for his friend;

Noble does not claim that Poe in any way attempted to make a gift of his own services and the Probate judge conducted no inquiry on these grounds.

3. Poe did not raise in this court or the Probate Division an issue of estoppel.

4. Noble also represented that, if awarded the $8,000, he would bear the cost of law clerks and paralegals used by him at $10 per hour for a total of 36.2 hours.

In his brief on appeal, Noble claims that Poe conceded the reasonableness of the fee. This allegation finds no support in the record and Noble provides no record citation. Poe's statements meant only that the fee could be considered reasonable under ordinary circumstances not involving apportionment.

any check to the firm of Poe and Noble. The rest is, I think, a matter that is properly presented ... in another forum. But, what I have now are the exceptions of the request for compensation, and I think it's clear on its face that it would be a matter for this Court's discretion to determine whether or not it goes to Poe and Noble or if it goes to Mr. Poe and part to Mr. Noble.

Poe verified the existence of the loan but did not testify about the services he had rendered. In an order dated November 4, 1985, the judge found that "Mr. Noble is entitled to his requested fee of $8,000 as reasonable counsel fees for services he rendered to the estate. The Court further finds that Mr. Poe should be awarded $1,012.04—the remainder of the suggested reasonable fee requested for services rendered on behalf of the estate." [5]

## II

### A.

Poe contends that the Superior Court of the District of Columbia lacked jurisdiction under D.C.Code § 20–101(d)(1) and § 20–751 (1981) to consider the exceptions filed by Noble. These sections are part of the District of Columbia Probate Reform Act of 1980 (Reform Act), which provided a comprehensive revision and modernization of the process for probating and administering decedents' estates. *See* Legislative History of D.C.Law 3–72, Bill No. 3–91, Act No. 181, at 1–3 (1980) (Legislative History). They replaced a customary percentage test for determining compensation for personal representatives and attorneys with a procedural framework requiring the personal representative to submit a written request for compensation to the court, accompanied by verified and substantiating documentation. *Id.* at 62–63. The purpose of the documentation is to aid the court in its determination of the reasonableness of the requested fee for apparently the sole purpose of protecting the interests of claimants under the will.[6] Although heavily debated, *id.* at 62, these provisions are not extensively clarified by the legislative history. The general purposes of the Reform Act, however, support the propositions that it sought to enhance the efficiency of these proceedings by increasing, at least with regard to undisputed matters, the power of the personal representative, and that counsel for the estate was viewed as an employee of the personal representative.[7]

Section 20–751(c) provides that "[e]ach personal representative or special administrator shall submit a written request to the

5. Poe filed a motion for reconsideration seeking a 53%–47% split of the requested $9,012.24, on the same date he filed a notice of appeal, which deprived the Probate Court of jurisdiction to grant the motion. *See Smith v. Pollin,* 90 U.S. App.D.C. 178, 180, 194 F.2d 349, 350 (1952).

6. Under § 20–751(c)(1), the documentation must show or contain:
(1) the reasonable relationship of proposed compensation to the nature of the work performed; (2) a statement by any attorney employed by the personal representative that as soon as feasible the attorney gave to the personal representative an estimate of costs and any change in costs for work to be performed with respect to administration of the estate; (3) the reasonableness of the time spent, including the number of hours spent and the usual hourly compensation for the work performed; (4) the results achieved; and (5) a statement by the personal representative or special administrator that all of the time limitations imposed by the provisions of this title or by the Rules have been met, or, in the event that all of the time limitations were not met, the dates such compliance was due, the actual date of compliance and the reasons for delay.

7. One of the major goals of the Reform Act was:
To reduce the need to obtain specific court authorization in uncontested matters by increasing the powers and responsibilities of the personal representative and of the Register of Wills while preserving the rights of interested persons to apply to the court at any time to resolve any question concerning the estate or its administration.
Legislative History, *supra,* at 4. The Reform Act did not increase the power of the Register of Wills, because the Council Committee concluded that such an expansion was beyond the Council's power. *Id.* at 5. *See* D.C.Code § 1–233 (1981). The legislative history states at 62–63 that the attorney is "hired by the personal representative" and that the personal representative is primarily responsible for assuring competent performance.

Court[8] for compensation for services performed by such personal representative or administrator or any attorney employed by either of them." As personal representative, Poe filed such a request. As attorney, Noble then filed "Exceptions" seeking the direct payment of $8,000 to him instead of to the former law firm of Poe and Noble, which no longer had any banking capacity. Section 20–751(e) provides that *"interested persons* may file with the Register [of Wills] a written exception to the request for compensation." (Emphasis supplied.) Section 20–101(d)(1) defines an "interested person" as:

> (A) any person named in the will to serve as personal representative, until the appointment of a personal representative; (B) a personal representative; (C) any legatee in being, whether such legatee's interest is vested or contingent, until the legacy is paid in full; and (D) an heir, except that an heir ceases to be an interested person once a will has been admitted to probate: Provided, that, an heir is an interested person for the purpose of any proceeding to contest the validity of the will and following any determination that the decedent dies intestate.

Because the attorney to an estate is not among these four categories, the Probate judge is precluded under the Reform Act from considering an "exception" that has been filed by the attorney.

The Reform Act does not explicitly address how an attorney, as distinct from "interested persons," may protect his or her interests when there is a dispute regarding the personal representative's request for compensation. *See* D.C.Code § 20–751 (1981) (claims by personal representatives and attorneys). This is consistent with the purposes of the Reform Act, which include the protections of the estate and its beneficiaries and leaves many details with regard to the administration of the estate, *see, e.g.,* D.C.Code §§ 20–1301, –1305 (1981) (closing the estate), either to the court and to court rules, or to the Register of Wills. *See* D.C.Code § 20–107 (1981); Super.Ct.Prob.R. 128 IV (role of the

Register of Wills); *see also supra* note 7, and accompanying text. In the instant case, we conclude that the rules of the Probate Division afford a procedural recourse for the attorney to obtain resolution of disputes concerning the Request for Compensation that is consistent with the efficient handling of estate administration.

■ Super.Ct.Prob.R. 124 is designed to implement § 20–751 regarding the claims of personal representatives and attorneys to the estate. It provides that a request for compensation "may be submitted substantially in accordance with the following format," which includes spaces for insertion of the amount of the attorney's fees and attorney verification. We do not read this rule as precluding a personal representative from making a joint request for fees under appropriate circumstances. However, the rule clearly contemplates the apportionment of attorney's fees in the Request. The attorney whose fee is not so apportioned must be a proper party to seek compliance with the rule. The appropriate way for Noble to have proceeded was by motion. *See* Super.Ct.Civ.R. 12–I (motions practice). The Probate judge, however, treated Noble's "Exceptions" as objections, a form of pleading not expressly recognized by the Reform Act or the rules of the Superior Court. Nonetheless, the judge properly focused on the relief sought by Noble and not on the label or caption of the pleading. *See Wallace v. Warehouse Employees Union No. 730,* 482 A.2d 801, 804 (D.C.1984) (citing *Coleman v. Lee Washington Hauling Co.,* 388 A.2d 44, 46 (D.C. 1978) and other cases). Although Noble's pleading was deficient as a motion, *see supra,* R. 12–I(e) (motion to be accompanied by points and authorities), in the absence of any indication of prejudice to Poe, we find no error by the judge in addressing the merits of Noble's "exceptions." D.C. Code § 11–721(e) (1981).

### B.

Interpreting an earlier statute, the United States Court of Appeals for the District of Columbia Circuit applied a general juris-

---

**8.** "Court" is defined in § 20–101 to mean the Probate Division of the Superior Court.

dictional prohibition to a claim for attorney's fees incurred in the administration of the estate:

> [The predecessor statute], which authorizes executors to pay attorneys' fees and the probate court to allow such fees in the executors' accounts, does not authorize the probate court to order executors to pay the fees.... [T]he probate court is without jurisdiction to compel an executor or administrator to pay a claim asserted against a decedent's estate.... If the executor or administrator contests the claim, the probate court's order approving it is "deprived of even evidential support."

*Bird v. Sullivan,* 115 U.S.App.D.C. 24, 25–26, 316 F.2d 675, 676–77 (1963) (attorney's fees); *cf. Bishop v. Baker,* 221 A.2d 912 (1966) ("well settled that the Probate Court lacks jurisdiction to compel an executor or administrator to pay a claim against the estate" to an estate creditor). This prior general state of the law, however, is specifically contravened by the jurisdictional structure of the nonfederal courts of the District of Columbia. *See* District of Columbia Court Reform and Criminal Procedure Act, Pub.L. No. 91–358, 84 Stat. 473 (1970) (D.C. Court Reform Act).

The D.C. Court Reform Act, §§ 16–3101 and 18–101 of the D.C.Code (1981), provides that the term "Probate Court" means the Superior Court of the District of Columbia. Section 11–921(a) grants the Superior Court jurisdiction over any civil action or other matter in law or equity in the District of Columbia, and § 11–921(a)(5) makes a specific grant of probate jurisdiction to the Superior Court. Thus, the "Probate Court" has become a division of the Superior Court that shares its general powers. "[T]here is no jurisdictional limitation prohibiting one division or branch [of the Superior Court] from considering matters more appropriately considered in another, and dismissal of an action is proper only where none of the divisions possess a statutory basis for the assertion of jurisdiction." *Ali Baba Co. v. Wilco, Inc.,* 482 A.2d 418, 426 (D.C.1984). "[T]here is no longer a 'Probate Court' as a court of limited jurisdiction. Rather the jurisdiction previously vested in that court is now vested in the Superior Court, a court of general jurisdiction." *Andrade v. Jackson,* 401 A.2d 990, 992 n. 5, 992–93 (D.C.1979).

■ This general jurisdictional grant does not mean, however, that each individual division of the Superior Court has power beyond its court rules or its relevant statutory subject matters. Each division is entrusted with a specific responsibility, each must follow the pertinent statutory mandates, and each must transfer inappropriate cases to the proper division. *See In re Tyree,* 493 A.2d 314, 318 n. 8 (D.C.1985) (no error in refusal to transfer case to Probate Division because that Division "has no jurisdiction" over the type of claim raised). Where the claim is related to a subject matter within the responsibility of the division, however, that division may rely upon its general equity powers to adjudicate the claim and to award relief. *Cf. Felder v. Allsopp,* 391 A.2d 243, 245 (D.C.1978) (Superior Court adjudication of parentage to determine visitation rights). In the absence of a contrary governing statute or rule, the judge sitting in the Probate Division could entertain a motion for an apportionment of administration expenses and make an award of attorney's fees. *See In re Askey's Estate,* 275 N.Y.S.2d 539, 541, 52 Misc.2d 361 (1966) (relying on the "wide jurisdictional latitude" afforded [New York's] Surrogate Court to make an award of attorney's fees).

We do not interpret the Probate Reform Act to provide to the contrary. The Act's provisions for presentment of claims address the claims of creditors against the decedent as distinct from disputes relating to the costs of administration of the estate. *See* D.C.Code § 20–901 *et seq.* (1981). Although the language of § 20–903(a)(2) ("all claims against the estate based on the conduct of or a contract with a personal representative shall be barred unless an action is commenced against the estate within 6 months of the date the claim arose") is broad enough to include a dispute between the personal representative and the attor-

ney for the estate over the apportionment of fees, the nature of their dispute does not strike us as the kind contemplated by the general statutory claims procedure. Rather, we think the drafters of the legislation contemplated that such disputes between the personal representative and the attorney with respect to costs of administration of the estate would be addressed under subchapter VI (claims by personal representatives and attorneys) of chapter 7 (administration of the estate), and not under chapter 9 (claims against the decedent's estate). The general probate rule is that, in the absence of any express requirement, a claim against the estate that arises after the death of the decedent, such as expenses incurred in the administration of the estate, need not be initially presented to the executor. 31 AM.JUR.2d *Executors and Administrators*, § 289 (1967 & 1986 Supp.); 34 C.J.S. *Executors and Administrators*, § 401 (1942 & 1986 Supp.). As to attorney's fees, "[i]n some jurisdictions at least, a claim for attorney's fees for services rendered to an estate may be made directly to the probate court without any necessity for presentation and allowance of the claim by the executor or administrator." 31 AM. JUR.2d § 289 (citing *El Paso National Bank v. Leeper*, 538 S.W.2d 803 (Tex.Civ. App.1976)). The pre-Probate Reform Act case of *Bird v. Sullivan, supra*, 115 U.S. App.D.C. at 25, 316 F.2d at 676, which treated claims for attorney's fees as ordinary claims against the estate, is not controlling.

On the record before us, it would be futile, and wasteful of precious estate resources, to require Noble at this stage to file a claim pursuant to § 20–905, when its denial by Poe is a foregone conclusion. Avoiding a cumbersome, time-consuming procedure, when the only issue is the apportionment of fees, will eliminate the need for publication of a claim and related additional services by the personal representative and the attorney for the estate. Permitting the attorney's concerns to be brought to the Probate judge's attention by motion for compliance with Rule 124 also will conserve judicial resources, eliminating, hopefully, the need for subsequent re-

consideration or further delay. It is in the interest of all parties, including the estate, to avoid leaving the attorney no recourse except to file a separate civil action in the Civil Division of the Superior Court; not only would this require an unnecessary expenditure of resources, but, at least initially, the issue would be removed from the judge who is best situated to address it.

### III

Finally, with regard to the merits, we hold that the Probate judge's original apportionment of the administration expenses was unsupported by the findings and, accordingly, an abuse of discretion. *See generally Johnson v. United States*, 398 A.2d 354 (D.C.1979) (trial court discretion). The judge awarded $8,000 to Noble for 137.4 hours of work and $1,012.04 to Poe for 104.5, and perhaps 114.5, hours even though the Request stated that both parties normally received $125 per hour for their services. The brief order makes no attempt to relate the compensation awarded to the factors contained in § 20–751(c), such as the nature of the work performed, the time spent, and the results achieved. *Cf. Fitzgerald v. Fitzgerald*, 464 A.2d 110, 112 (D.C.1983) (discretion abused in child custody case when trial judge failed to make findings on most of the relevant statutory factors). It is unclear whether the judge disbelieved Poe's claim of the actual number of hours that he had worked, or that the awards were controlled by some prior agreement or by Poe's friendship with the decedent. Accordingly, on remand, the Probate judge shall review her earlier apportionment and make a new determination, with appropriate findings, whether to grant a higher fee to the attorney than to the personal representative. Accordingly, the order is vacated and the case remanded.

*Ordered vacated and case remanded.*