Peter L. WILLIAMS and Franz
Ray, Appellants,

v.

George RAY, Appellee.

No. 87-784.

District of Columbia Court of Appeals.

Submitted June 21, 1989.
Decided Sept. 5, 1989.

Margaret A. Beller, Washington, D.C.,
was on the brief for appellants.

George Ray, pro se.

Before ROGERS, Chief Judge,
TERRY, Associate Judge, and
GALLAGHER, Senior Judge.

TERRY, Associate Judge:

This case involves a dispute among three
brothers over the administration of their
mother's modest estate. Appellants accuse

appellee, who is an attorney as well as their brother, of dissipating estate assets by spending too much time on unnecessary tasks connected with the administration of the estate. In particular, appellants claim that appellee not only transferred the decedent's bank accounts from one bank to another for no good reason, but charged the estate too much for doing so. Consequently, when appellee filed a statement of time and services with the probate court, appellants objected to it. After a hearing, the court awarded appellee $7,959.00 for services rendered by him as co-personal representative and counsel for the estate. Appellants argue that the court abused its discretion in making this award.

We are unable to discern from the record what the $7,959.00 represents. Furthermore, the trial court failed to make specific findings of fact with regard to appellants' claim that the services rendered by appellee were unnecessary and the time he billed was excessive. We therefore vacate the award of $7,959.00 and remand the case to the trial court with instructions to make appropriate findings of fact and thereafter to enter a new order with respect to appellee's request for compensation.

## I

Edith Ray died testate on February 24, 1986, while domiciled in the District of Columbia. Her estate consisted of a home, items of personal property, a savings account at Suburban Bank in Maryland, and three accounts (checking, savings, and a certificate of deposit) at First American Bank in the District of Columbia.[1] Because the estate was relatively small and because they were the sole devisees and legatees, her three sons petitioned the court to be appointed co-personal representatives of the estate. Two of the three brothers, Peter Williams and George Ray, signed the petition for probate,[2] and George Ray signed it in two other places as attorney for the petitioners, personally guaranteeing payment of court costs in that capacity. George Ray's signature as attorney for the estate also appears on the forms signed by all three brothers which waived the filing of inventories and accounts.

Edith Ray's will directed that any income from the rental of her home be deposited in an escrow account and that expenditures related to the home be paid from this account. Moreover, as is the case with most estates, unsecured debts outstanding at the time of Mrs. Ray's death (utility bills and a few other small obligations) needed to be discharged by the estate. To carry out the terms of the will and to pay these debts, George Ray decided to open an escrow account and an estate account. At the hearing Mr. Ray testified that he chose to open both accounts at Suburban Bank because he thought that Suburban offered the "best return possible," because he had more faith in Suburban's ability to handle these matters, and because Suburban's location in Silver Spring, Maryland, was close to his home and therefore more convenient for him than First American.

In his efforts to bring all these funds together in one place, Mr. Ray personally contacted officials of First American and Suburban on March 11, 1986. He testified that he spent three hours on this matter at First American on April 3, first at the branch on Riggs Road where his mother had kept her account and then at another branch in downtown Washington. When he encountered difficulty in getting First American to release his mother's funds, he consulted an official at the Probate Division of the Superior Court the following day, April 4. Later that same day, he again visited the downtown office of First American and then went to the Silver Spring branch of Suburban Bank. At that time, he stated, he spent more than one hour at each bank taking care of the neces-

---

1. The home was valued at $53,195, household furnishings were valued at $1,000, and the money in the four accounts amounted to $35,754.

2. Although these two both live in the Washington area, the third brother, Franz Ray, is a resident of California, which may account for the absence of his signature on the petition. He is nevertheless named as one of the three petitioners.

sary paperwork. Because First American still would not release the funds to him without a "letter of protection" signed by all three representatives of the estate, Mr. Ray, as attorney for the estate, drafted such a letter and presented it to his brothers for their signatures. Peter Williams testified that on April 11 he accompanied George Ray to the First American Bank to request that the funds in their mother's account be released to them. The funds were released.

George Ray eventually tendered a statement of time and services to the court requesting, *inter alia,* compensation for the time he spent effecting the transfer of funds from one financial institution to the other. His statement contained the following bank-related entries:

| Date | Description | Time |
|---|---|---|
| 3–11–86 | Conference with Suburban Bank Officials | 1.0 hour |
| 3–21–86 | Estate banking business (Suburban Bank) | 1.0 hour |
| 3–27–86 | Estate banking business (Suburban Bank) | 1.0 hour |
| 4–3–86 | Conference with First American Bank Officials | 3.0 hours |
| 4–4–86 | Meeting with First American Bank Officials | 2.0 hours |
| 4–8–86 | Conference with Sovran Bank Officials[3] | 1.0 hour |
| 4–14–86 | Estate banking business (Sovran) | 2.0 hours |
| 5–2–86 | Estate bank business (Sovran) | 1.0 hour |
| 5–9–86 | Estate banking business (Sovran) | 1.0 hour |
| 6–2–86 | Payment of estate debts and estate banking business (Sovran) | 2.0 hours |
| 6–16–86 | Estate banking business (Sovran) | 1.0 hour |
| 6–30–86 | Estate banking business (Sovran) | 1.0 hour |
| 7–30–86 | Estate banking business (Sovran) | 1.0 hour |
| | TOTAL | 18.0 hours |

In addition to these eighteen hours, Mr. Ray stated that he had spent thirty hours on other matters related to the administration of the estate and forty hours on matters pertaining to this litigation. Thus he sought "reasonable compensation" (he did not request a specific amount) for eighty-eight hours of work on behalf of the estate.

When appellants opposed his request for compensation, George Ray filed a complaint in the Probate Division of the Superior Court asking the court to award him the requested fees. A hearing was held in which Peter Williams testified on behalf of himself and Franz Ray, and George Ray testified on his own behalf. Although appellants initially objected to several items in the statement of time and services, at the hearing the sole contested issue was whether George Ray should be paid in full for the time he spent transferring his mother's funds from First American to Suburban Bank.[4]

In its post-hearing order the court awarded $7,959.00 to George Ray as "compensation for services rendered in his capacity as co-personal representative and counsel for the Estate...." Appellants contend on appeal that the trial court abused its discretion in compensating Mr. Ray for his work in the transfer of funds. On appeal, and for the first time, appellants also contend that the award should be reversed because

---

**3.** By the time Mr. Ray filed his statement, Suburban had merged with another bank and had changed its name to Sovran Bank.

**4.** At the hearing appellants' counsel asserted that George Ray should receive compensation from the estate for no more than ten hours. The court apparently interpreted this statement to mean that appellants were objecting specifically and solely to the amount of time it took Mr. Ray to transfer the funds from First American Bank to Suburban Bank. Addressing Mr. Ray at the start of the hearing, the court said:

So the rest of your statement of services, as I've heard from [appellants' counsel], is not totally challenged; it's simply their conclusion

that ten hours is more reasonable for this Court to award in light of the services performed. So, if you want to respond to the objections that were made with respect to the time spent at the bank ... I'm going to ask that you take the stand[.]

Thereupon Mr. Ray began his testimony, which was limited to events connected with the closing of the accounts at First American and the opening of the accounts at Suburban. Thus the issue at trial seems to have been whether, in addition to the ten hours Mr. Ray spent doing business at Suburban, he should also be paid for the eight hours he allegedly spent transferring his mother's First American accounts to Suburban.

Mr. Ray failed to provide them with an estimate of his fees as required by court rule.[5]

## II

██ A request for compensation for work performed with respect to the administration of an estate must be accompanied by documentation showing a reasonable relationship between the requested fees and the nature of the services performed, the reasonableness of the time spent, the number of hours expended, the applicant's usual hourly compensation, and the results achieved. D.C.Code § 20–751(c) (1981). A trial court must consider these statutory factors when determining the amount of compensation, if any, to be awarded. *See Poe v. Noble,* 525 A.2d 190, 196 (D.C.1987). If the court's determination to grant or deny the request is based on these factors and is accompanied by findings of fact, then this court will affirm absent an abuse of discretion. But the failure to make appropriate findings of fact is itself an abuse of discretion. *Id.,* citing *Johnson v. United States,* 398 A.2d 354, 363–364 (D.C. 1979).

██ In the case at bar, the court found as a threshold matter that appellee was employed as counsel for the estate.[6] Then, citing D.C.Code § 20–751, the court determined that appellee should receive $7,959.00 for his services because "the amount represents reasonable compensation in light of the nature of the work performed, the size of the estate, the time spent, the usual hourly compensation, and the results achieved." This conclusory recitation of the factors listed in the statute is not an adequate substitute for specific findings of fact. For one thing, we cannot

glean from either the court's order or the record as a whole how many hours were encompassed by the award, or what hourly rate the award was based on. Appellee's statement of time and services shows eighty-eight hours spent on estate matters. Dividing $7,959.00 by eighty-eight hours results in an hourly rate of $90.44, rounded to the nearest cent. In their opposition to appellee's request for compensation, appellants stated that appellee charged the estate $1,692.00 for the eighteen hours he spent on banking matters. Dividing $1,692.00 by eighteen hours yields an hourly rate of $94.00. Before the hearing, appellants offered to pay appellee $1,250.00, which they said represented ten hours of work at appellee's customary hourly rate of $125.00.

Given this confusion in the record, we simply cannot tell which of these three hourly rates, if any, the trial court used in arriving at the award of $7,959.00. In the absence of specific findings by the court as to the number of hours for which it was compensating appellee and at what hourly rate, we cannot even begin to review the court's order for abuse of discretion. Accordingly, and because the request for compensation was controverted, we remand this case to the trial court for specific findings of fact. *See Stansel v. American Security Bank,* 547 A.2d 990, 994–996 (D.C.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1746, 104 L.Ed.2d 183 (1989); *Poe v. Noble, supra,* 525 A.2d at 196; *see also Fitzgerald v. Fitzgerald,* 464 A.2d 110, 112–113 (D.C.1983).[7]

██ In addition to explaining how it calculated its award of $7,959.00, the trial court on remand should make findings as to the reasonableness of appellee's decision

---

5. Super.Ct.Prob.R. 124(a)(5) requires that a request for compensation include a statement "[t]hat the attorney for the personal representative as soon as feasible gave to the personal representative an estimate of the fees and any change in fees for work to be performed with respect to the administration of the estate."

6. This finding is not contested on appeal.

7. Appellants also argue that all of the claimed fees should have been disallowed because appel-

lee failed to provide them with an estimate of anticipated fees as required by Super.Ct.Prob.R. 124. Because appellants failed to raise this issue in the trial court, we will not consider it now on appeal. *See, e.g., Chase v. Gilbert,* 499 A.2d 1203, 1209 (D.C.1985); *District of Columbia v. Air Florida, Inc.,* 243 U.S.App.D.C. 1, 8–9, 750 F.2d 1077, 1084–1085 (1984); *Miller v. Avirom,* 127 U.S.App.D.C. 367, 369–370, 384 F.2d 319, 321–322 (1967).

to move the funds on deposit at First American to a new account at Suburban,[8] the reasonableness of the time appellee spent in getting First American to release the funds, and the merits of appellants' claim that appellee should not be awarded fees for more than ten hours' work because he was inexperienced in estate matters and thus took more time than an experienced practitioner would have taken. We leave it to the trial court, in its discretion, to decide whether such findings can be made on the existing record or whether additional testimony is required.

■ Finally, appellee claims in his brief that "[t]here is no foundation in law or fact for any of the positions taken by appellants and their counsel in this appeal." Proceeding from this premise, appellee urges this court to enter an order directing appellants and their counsel to show cause why sanctions should not be imposed on them. *See* D.C.App.R. 38. But at least one of appellants' arguments has merit, *viz.,* their argument that the trial court abused its discretion in not making specific findings of fact to support the compensation award. Because the appeal is not entirely frivolous, sanctions are not appropriate. *See Tupling v. Britton,* 411 A.2d 349, 351 n. 4 (D.C.1980) (Rule 38 costs and damages are awarded when the assertions on appeal are "utterly without merit").

The order awarding appellee $7,959.00 as compensation for his services to the estate is vacated, and this case is remanded to the trial court for further proceedings consistent with this opinion.

*Vacated and remanded.*

**8.** We note in this regard that appellee's actions were taken with appellants' knowledge and consent according to his brother Peter, who stated at the hearing, "And simply to keep matters moving smoothly, we went along with him and let him transfer the funds."