**In re D.M.B.; Evan J. Krame, Appellant**

**In re Dion Baker Special Needs Trust; Evan J. Krame, Appellant.**

Nos. 06–PR–1064, 06–PR–1379, 07–PR–207.

District of Columbia Court of Appeals.

Argued Dec. 2, 2008.
Decided Aug. 20, 2009.

Edward G. Varrone, Washington, for appellant.

Stacy L. Anderson, Assistant Attorney General, with whom Peter J. Nickles, Interim Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for the District of Columbia.

Before REID, KRAMER, and FISHER, Associate Judges.

KRAMER, Associate Judge:

Appellant Evan J. Krame is the trustee for two special needs trusts, the D.M.B. Special Needs Trust and the Dion Baker Special Needs Trust. He argues that in each case the trial judge erred in denying his requests for compensation expressed as a percentage of the assets of the trust being administered and failed adequately to consider the evidence offered in support of the requested fees. He further argues that Judge Wolf abused his discretion in sanctioning him and in amending the D.M.B. Special Needs Trust. We affirm.

## I. Facts

### A. The D.M.B. Special Needs Trust

The D.M.B. Special Needs Trust ("D.M.B.Trust") was created as a result of a settlement from a mother's lawsuit against a hospital on behalf of her minor son. It was created in lieu of a guardianship for the proceeds as provided in D.C.Code § 21–120(b) (2001).[1] Judge

---

1. D.C.Code § 21–120(b) (2001) requires that the court establish a guardianship or conser-

Joan Zeldon approved the proposed trust, which had been drafted by appellant, on the conditions that a guardian be appointed; that the trustee file annual accounts with the court; and that the trustee's compensation "be reasonable, which may be established with the assistance of standards of local trustee practice, subject to approval by the court." Appellant was made the trustee for the D.M.B. Trust.

The D.M.B. Trust provides that the trustee's compensation shall be calculated as follows:

> A Trustee shall be entitled to reasonable compensation for his or her services as a Trustee hereunder, consistent with industry standards, which may be expressed as a percentage of Trust assets. All trustee compensation is subject to review by the Superior Court, to be approved if reasonable and modified if unreasonable. In considering the reasonableness of fees reported in the accounting of the Trustee, the Court may consider the industry practice and any other factors.

## 1. The First D.M.B. Trust Accounting

Appellant's first account reflected compensation calculated as 1% of the Trust's assets ($3,396.39). The accounting also reflected quarterly fees paid to the Trustee's investment advisor, "Choice." The accounting was approved on March 2, 2005,

by Judge Wertheim. No issue is presented as to this compensation award.

## 2. The Second D.M.B. Trust Accounting (06–PR–1064)

Appellant's second account, filed on December 5, 2005, reflected compensation again calculated as 1% of the Trust's assets ($6,737.88). Judge Wolf rejected the account because he found that appellant had not supported his request for fees with appropriate documentation delineating the services performed on behalf of the trust, thus preventing the judge from determining the reasonableness of the fees requested. Accordingly, Judge Wolf ordered appellant to file a "thorough explanation" of his fees "so that the court may determine their reasonableness."

In response, appellant conceded that courts "have the inherent power to review the compensation paid trustees from trust assets" for "reasonableness," but argued that his flat 1% fee was reasonable because institutional trustees charge 1%. Noting also that Special Needs Trusts require specialized knowledge regarding governmental benefits, he asserted his own considerable skill and experience as a trustee or guardian. He did not, however, explain how his fee was reasonable in relation to the work performed for the D.M.B Trust, nor how a percentage-based fee is superior to an hourly-based fee in fairly compensating the attorney consistently

vatorship to receive the proceeds of an action on behalf of a minor, but D.C.Code § 19–1304.01(4) (2008 Supp.) allows the court to create a trust for the benefit of an individual in lieu of transferring the proceeds to such a conservatorship or a guardianship. When such trusts are used for persons with special needs ("special needs trusts"), beneficiaries can maintain their eligibility for need-based government benefits such as Medicaid and Supplemental Security Income (eligibility for which is tied to the applicant's income and

assets), while at the same time preserving their own assets to provide for supplemental items or services not covered by government programs. See Jennifer Field, *Special Needs Trusts: Providing for Disabled Children Without Sacrificing Public Benefits*, 24 J. Juv. L. 79, 79 (2004); 42 U.S.C. § 1396p (d)(4)(A) (2005) (exempting special needs trusts from consideration for Medicaid eligibility so long as upon the trust beneficiary's death the government is reimbursed from the trust up to the amount of medical assistance paid).

with the needs of the Trust.[2] Instead, he asserted only that an hourly charge might cause the family of the beneficiary to "hesitate to call upon the Trustee for assistance if concerned that the hours expended by the Trustee would increase the fees charged"—without acknowledging concerns that a flat 1% fee based on trust assets might engender. Judge Wolf again ordered him to file a "thorough explanation" of his fees "so that the court may determine their reasonableness." In response, appellant likened his practice to "the trust department of any bank or institutional trustee, albeit on a somewhat smaller scale," and noted that his $6,737.88 request would work out to some 22.5 hours if charged at his normal $300 per hour rate. He then valued the estate at $774,413.81 as of September 30, 2005,[3] and described his activities for the trust such as managing and maintaining a van for the child and working to facilitate the construction of a home for the child, which had been purchased with the trust's funds. He conceded, though, that he had "not

kept time for specific services as trustee in this case." [4]

Judge Wolf deemed appellant's response to be "essentially a motion for reconsideration requesting the court to authorize a commission form of payment for services rather [than] one based upon time expended (and documented)." He reiterated and incorporated reasoning for rejecting a "commission" form of compensation in "this or any other special needs trust" that had been expressed in similar cases.[5] The judge found himself in "a quandary ... because ... the total lack of information supplied by the trustee" would create "some appearance of arbitrariness" no matter what the court decided. Nonetheless, he allowed appellant fees totaling 1% of the trust's assets as described in appellant's most recent response ($7,744.14), less the funds paid to the outside investment consultant ($2,313.73) and less the fees paid to the certified public accountant for the trust's tax returns ($1,110.00) plus $1,000 of additional fees, for a total of $5,320.41. He allowed $1,000 of additional fees to keep his assessment from being

2. As noted above, the Trust was already being charged separately for some management functions delegated to others, such as appellant's investment advisor, Choice.

3. Appellant now characterizes his $6,737.88 fee as being only 0.87% of the trust's total assets, but it is undisputed that appellant had previously characterized the $6,737.88 as being equivalent to 1% of the trust's total assets. Approximately one third of the trust's assets was real property.

4. Appellant also explained that he had met with the investment advisor he retained for the trust and paid that advisor $2,313.73 from trust funds for its services, as well as paying $1,110.00 of trust funds to a certified public accountant for preparation of the trust's tax returns.

5. The court cited two orders from *In re Seay*, No. F 25–96 (January 21, 2005 and May 13,

2005), a case in which appellant was trustee and Judge Wolf presided; two orders from *Estate of Allen*, No. TR 15–02 (December 13, 2005 & March 1, 2006), a case in which Judge Wolf presided; and one order from *In re Beal*; No. TR 2–99 (May 11, 2005) (Wertheim, J.). Judge Wolf also cited his two orders in this case, dated January 20, 2006 (ordering appellant to file a "thorough explanation" of his fees "so that the court may determine their reasonableness") and May 9, 2006 (same).

Appellant argues that Judge Wolf erred in ordering appellant to "comply with the trial court orders that were entered in other cases" and that, therefore, "the Superior Court memorandum orders entered in other unrelated cases should not be considered in determining the merits of [appellant's] appeals." However, Judge Wolf did not order appellant to comply with those orders; he merely cross-referenced them as setting out his (and Judge Wertheim's) reasoning.

"too harsh" in light of appellant's failure to keep time records, which had deprived the court of "any other method of determining reasonableness." But because appellant had already paid himself a greater amount from the trust ($6,737.88), appellant was ordered to reimburse the trust the $1,417.47 difference. Appellant appeals this order in case No. 06–PR–1064.

### 3. The Third D.M.B. Trust Accounting (07–PR–207)

On November 22, 2006, in accordance with the court's previous orders, appellant filed a petition for compensation with the court as part of the trust's third accounting, seeking attorney's fees in the amount of $17,943.58 based on an hourly-rate schedule and including time sheets for 73.4 hours of work performed by appellant and his staff.

Judge Wolf reviewed the petition and found that between 24.5 and 29 hours of the time charged appeared to represent charges to the Trust for the time appellant had spent working on his challenges to the court's rulings on his earlier fee petitions, including time spent consulting with his appellate counsel regarding case No. 06–PR–1064 (regarding the Second D.M.B. Trust accounting). At $300 per hour, such charges constituted up to 48.5% of the total fees requested, or $8,700.00. The judge found appellant's request for compensation regarding these matters to be an inappropriate request for compensation because it was "for time spent solely to benefit himself and not the trust beneficiary," and therefore unfair to the trust beneficiary.[6] Accordingly, he disallowed $8,700.00 worth of attorney's fees and reduced the resulting amount ($9,243.58) by 15%, awarding appellant a total of $7,857.04.

In the same order, the judge amended various provisions of the trust with respect to service of court filings, on-going court supervision, moving the situs of the trust to another state, bonding the trustee, trustee compensation, successor trustees, and trustee liability for breach of fiduciary duty. These amendments required, *inter alia*, that appellant's compensation requests be more detailed and prohibited a "commission form of compensation," as well as restoring the trustee's liability for breach of fiduciary duty. Appellant appeals this order in case No. 07–PR–207.

### B. The Dion Baker Special Needs Trust (06–PR–1379)

Appellant is also the trustee for the Dion Baker Special Needs Trust ("Dion Baker Trust"), which was created as a result of a settlement from a mother's lawsuit against a hospital on behalf of her then-minor son *See* Note 1, *supra*. Judge Burgess approved the trust, which had been amended to address concerns raised at a May 3, 2005, hearing, including concerns regarding trustee compensation.

The Dion Baker Trust provides that the trustee's compensation shall be calculated as follows (emphasis in original):

A Trustee shall be entitled to reasonable compensation for his or her services as Trustee hereunder, consistent with industry standards, not to exceed one percent (1%) of the trust corpus, determined annually. The Trustee shall prepare a statement of fees which shall be attached to the accounting and delivered to the interested persons. Unless the interested persons object to

---

6. Judge Wolf's earlier May 9, 2006, order had stated that the court "will not compensate [appellant] for the preparation of his response" to the court's request for a "thorough explanation" of his fees and "directed [him] not to submit any future request for compensation that includes it."

the compensation by serving the Trustee and filing an objection with the Court, within thirty (30) days of service of the accounting upon the interested persons, the trustee may pay his or her compensation without Order of the Court. Upon petition by an interested person or in connection with the review of the account, Trustee compensation is subject to further review by the court, to be approved if reasonable and modified if unreasonable. **In considering the reasonableness of fees reported in the accounting by the Trustee, the Court shall consider the custom of the community, the trustee's skill, experience and facilities; the time devoted to trust duties; the amount and character of trust property; the degree of difficulty, responsibility and risk assumed in administering the trust, including making discretionary distributions; the nature and cost of services rendered by others; and the quality of the trustee's performance and any special skills in support of that performance.**

On June 8, 2006, appellant gave notice of his first accounting for the trust and of his fees as trustee. The fees for the period were "$17,264.18, calculated at 1% of the value of the trust, which is one percent 1% of $1,726,418." The first accounting identified the trust assets, how they were invested, how they performed, and over sixteen thousand dollars in administrative fees charged by the institutional investment manager. But the accounting did not provide any information regarding appellant's services furnished to the trust. Accordingly, Judge Wertheim disapproved appellant's notice of fees without prejudice to "reconsider[ ] with accompanying information establishing the reasonableness of such fees in accordance with the factors" specified in the trust agreement.

In response, appellant asserted that he "receives compensation for his services, set by agreement of the parties at one percent (1%) of the trust corpus, per year, payable quarterly" and that one percent was a reasonable amount because institutional trustees charge more; because one percent is a customary fee in the District of Columbia; because the "degree of difficulty, responsibility, and risk associated with serving as the trustee of a special needs trust supports a 1% fee as reasonable"; and because the "quality of services provided by the Trustee support a fee of 1% as reasonable." Appellant listed specific services he generally provided, including, *inter alia*, legal research, opening bank and investment accounts, interviewing and consulting with investment advisors; and real estate matters. At the same time, he had records that merely showed "at least 40 hours of service [being] devoted to this trust," and gave no indication of how that time was divided among his services. He asserted that "no emphasis [should] be placed upon time records as a measure of reasonableness" because an hourly charge might cause the family of the beneficiary to "hesitate to call upon the Trustee for assistance if concerned that the hours expended by the Trustee would increase the fees charged."

Judge Wertheim disagreed with this reasoning because "there are no parties to this trust in the conventional sense," the court having created the trust pursuant to its power to create a trust in lieu of a guardianship. Thus, "it is the Court rather than any 'party' that determines whether the trustee's compensation [as specified by the terms of the trust] is 'unreasonably low or high.'" Further, quoting from the trust agreement and the statements made by the parties and the court at an earlier hearing, Judge Wertheim found that the 1% figure was meant to be a cap, not a *per*

*se* "measure of reasonableness," and that—

> [c]ontrary to the Court's plain direction, [appellant] has calculated his proposed compensation by starting with his requested one percent and then reasoning backward by seeking grounds to justify it as reasonable, instead of starting with the factors specified by the Court to arrive at a reasonable amount which is then subject to a one percent limitation.

Judge Wertheim also found that the standard trust management fees charged by institutions are inapposite to Special Needs Trusts, nor had appellant shown that "local custom" established the reasonableness of percentage fees for such trusts in the District of Columbia.[7] The present case, the judge observed, was "merely the latest in a long series of instances in which [appellant] has resisted the Court's efforts to get him to account for his time as a special needs trustee." Accordingly, while appellant was "entitled to 'reasonable' compensation, the burden is on [him] to provide the Court with sufficient information to determine what is reasonable." Appellant had "offer[ed] no calculation or method of calculating any specific amount of compensation," requiring the court to make its "determination of reasonableness upon the only information available."

Judge Wertheim calculated that $17,264.18 for 40 hours of work is equivalent to $431.60 per hour, a rate that was "unreasonably high, particularly as the 40 hours claimed do not differentiate between services of the [appellant] himself and those of his paralegal, his staff accountant, and an associate attorney with two years' experience and a Maryland judicial clerkship." Taking into account his experience reviewing over 1,500 compensation petitions filed in probate matters over a three-year period, the judge concluded that a reasonable average hourly rate for appellant and his staff was $210 per hour (assigning 50% of the time to appellant at $300 per hour and 50% of the time to his staff at an average of $120 per hour), for a total of $8,400 for 40 hours of work. "If this fails to take account of information warranting a greater sum," the judge added, "the fault lies with the [appellant's] resistance to providing such information." Appellant appeals from this order in case No. 06–PR–1379.

## II. Discussion

The District of Columbia has adopted the Uniform Trust Code. D.C.Code §§ 19–1301 to–1311 (Supp.2008). It entitles a trustee to compensation that is reasonable under the circumstances if the terms of the trustees' compensation are not specified in the trust document. *Id.* at § 19–1307.08(a). Even if the terms of the trust specify the trustees' compensation, the court may allow more or less compensation if the trustees' duties have changed substantially or if the compensation specified by the trust terms would be either "unreasonably low or high." *Id.* at § 19–1307.08(b).

As adopted, the Uniform Trust Code did not change the law of the District of Columbia regarding trustee compensation, which followed the Restatement of Trusts in leaving the fairness of trustee compensation to the sound discretion of the court according to the particular circumstances of the case. *See McLean v. American Sec. & Trust Co.*, 113 F.Supp. 427, 429 (D.D.C. 1953) (citing RESTATEMENT OF TRUSTS § 242, cmt. b). The Uniform Trust Code has also cited in its comments the Restatement's

---

7. In another case, Judge Wertheim had noted that "of 22 such trusts then under supervision in the District, in only eight was a percentage fee authorized and in all eight the trustee was one of only two attorneys—one of whom was [appellant]."

list of factors relevant to determining compensation:

> Relevant factors ..., as specified in the Restatement, include the custom of the community; the trustee's skill, experience, and facilities; the time devoted to trust duties; the amount and character of the trust property; the degree of difficulty, responsibility and risk assumed in administering the trust, including in making discretionary distributions; the nature and costs of services rendered by others; and the quality of the trustee's performance.

UNIFORM TRUST CODE § 708 cmt. (2005) (citing RESTATEMENT (THIRD) OF TRUSTS § 38 cmt. c (Tentative Draft No. 2, approved 1999); RESTATEMENT (SECOND) OF TRUSTS § 242 cmt. b (1959)).

▮▮ Accordingly, we continue to review a trial court's decision regarding trustee compensation for an abuse of discretion. *See In re King,* 769 A.2d 771, 776 (D.C.2001); *McLean v. American Sec. & Trust Co., supra.* "An exercise of discretion may be erroneous but still legal and free from abuse. Judicial discretion will not be reversed unless it appears that it was exercised on grounds, or for reasons, clearly untenable or to an extent clearly unreasonable." *Johnson v. United States,* 398 A.2d 354, 363 (D.C.1979).

▮▮ The main issue these appeals present is actually quite limited. Appellant does not argue—nor should he in light of § 19–1307.08(b)—"that a trial court must award him compensation based only on a percentage of trust assets and cannot review his compensation [request] as trustee in light of all the factors applicable to review [ ] the reasonableness of trustee compensation." The District of Columbia, for its part, does not dispute that in a proper case trustee compensation expressed as a percentage of trust assets may end up being "reasonable" compensa-

tion in a special needs trust case. It contends that the point correctly recognized by both judges in the instant cases is that trustee compensation must take into account a variety of factors, including the amount, type, and quality of services actually rendered by the special needs trustee, and that only following that determination may a judge fairly decide—in a given case—that a percentage fee is a correct approximation of the compensation rightly earned. *See, e.g.,* Judge Wertheim's reasoning in the Dion Baker Case (rejecting appellant's effort to "start[ ] with his requested one percent and then reason[ ] backward by seeking grounds to justify it").

We agree with the District's analysis and can find no abuse of discretion by either judge in weighing the considerations leading to a proper award of compensation in those cases. Appellant argues that both judges mistakenly ruled that "compensation of trustees determined as a percentage of trust assets, labeled by the trial courts as a 'commission,' is not allowed in the District of Columbia, notwithstanding the terms of the trust," but he misapprehends the trial courts' orders. Neither Judge Wolf nor Judge Wertheim ruled that compensation expressed as a percentage of trust assets was strictly forbidden in the District of Columbia. Instead, they ordered appellant to prove that the amount of compensation he requested, which happened to be expressed as a percentage of trust assets, was "reasonable" in each case, as the statute requires. The requirement that compensation requested beasr close relation to matters such as work actually performed and time expended is particularly apt in the case of special needs trusts, where attorneys—who are officers of the court—regularly serve as trustees in lieu of financial institutions, and where court supervision of trustee

compensation should fairly mirror the protections afforded by the guardianship statute, which the special needs trust effectively displaces. *See* note 1, *supra; In re Examination of Annual Inventory & Account,* 2003 N.Y. Slip Op. 51146(U) at 4, 2003 WL 21815970 (N.Y.Sup.Ct.2003). Thus, neither Judge Wolf nor Judge Wertheim applied a uniform rule that appellant's compensation could not be expressed as a percentage of the trust's assets. Rather, they ordered appellant to prove that the amount of his requested compensation (however calculated) was reasonable before approving the compensation. *See* D.C.Code § 19–1307.08(b).

Moreover, both trial courts gave appellant the opportunity to present evidence on the issue, specifically ordering him either (a) to file a "thorough explanation" of his fees "so that the court may determine their reasonableness" (in the case of the D.M.B. Trust) or (b) to provide "information establishing the reasonableness of such fees in accordance with the factors" specified in the trust agreement (in the case of the Dion Baker Trust). The fact that he did not always keep accurate time records and chose to present and stand on what amounted to (contrary to his present position) an argument that 1% of the trust assets is *per se* reasonable does not yield an abuse of discretion, given each judge's repeated insistence that he supply concrete supporting information.

■ Specifically, Judge Wolf did not abuse his discretion in calculating appellant's compensation in the D.M.B. Trust's second accounting. There, Judge Wolf ultimately calculated appellant's compensation as 1% of the highest number appellant provided for the trust's corpus (resulting in a starting amount of $7,744.14, which we note is $1,006.26 higher than appellant had originally paid himself) less amounts paid to other parties for services, on the ground that appellant himself had not rendered those services and should not be compensated for them, plus an extra thousand dollars in compensation. If anything, appellant benefitted from Judge Wolf's decision to grant him an approximately $2,000 margin of error. Thus, there was no error in Judge Wolf's order that appellant reimburse the D.M.B. Trust the $1,417.47 difference between the amount he had paid himself and the amount to which the court found he was reasonably entitled.

■ Likewise, Judge Wolf did not abuse his discretion in disallowing $8,700.00 worth of attorney's fees from the D.M.B Trust's third accounting and setting off the amount allowed against amounts already paid, or in disallowing the $200 filing fee for his appeal of the trial court's compensation determination. As Judge Wolf noted in his order, he had previously ordered appellant not to charge the trust for time spent addressing the judge's previous compensation matter. Yet appellant's time records indicated that he was seeking compensation for significant amounts of time spent doing just that, and the judge found that he had also charged the trust for money spent filing his appeal. In light of the court's prior order, we cannot say that the judge abused his discretion in disallowing compensation for time spent by appellant in disagreeing with the judge's analysis of the compensation issue. *See generally* 90A C.J.S. TRUSTS § 395 ("Neither are counsel fees allowable for services rendered to the trustee individually ... or in litigation of the trustee's accounts.").

■ Further, Judge Wertheim did not abuse his discretion in calculating appellant's compensation for his work for the Dion Baker Trust. While appellant takes issue with the judge's determination of what constitutes an "average" or "high end" legal fee in the trustee business local

custom was only one factor for assessing the reasonableness of trustee compensation under the terms of the trust itself, which also cited the trustee's skill, experience and facilities; the time devoted to trust duties; the amount and character of trust property; the degree of difficulty, responsibility and risk assumed in administering the trust, including making discretionary distributions; the nature and cost of services rendered by others; and the quality of the trustee's performance and any special skills in support of that performance. Judge Wertheim noted that although appellant's skill, experience, and quality of work were widely-recognized, this did not exempt him from an obligation to keep individual time records. Moreover, as the judge pointed out, even if he had credited appellant $300 (the rate appellant normally charges by the hour) for each of the 40 hours appellant documented he had worked, that amount would come up to only $12,000—almost $6,000 less than what appellant was seeking. Finally, it was not unreasonable for the judge to apportion the hours appellant submitted evenly between himself at appellant's known hourly rate ($300) and the work that his staff had performed and for which it would charge an average $120 per hour.[8]

■ Appellant next argues that Judge Wolf inappropriately sanctioned him by reducing his compensation from the amount requested in the third D.M.B. Trust accounting. Appellant calculates the sanction amount as being $10,086.53, the difference between the $17,943.58 requested and the $7,857.04 granted. But appellant misconstrues Judge Wolf's action. In reducing appellant's compensation by $8,700 in attorney's fees, Judge Wolf did not "sanction" him; he exercised his statutory authority to determine a reasonable amount of compensation for the trustee's efforts. Judge Wolf did, of course, explicitly sanction appellant 15% of $9,243.58—the difference between the amount requested ($17,943.58) and the amount disallowed ($8,700), or a sum of $1,386.54. That sanction was well within Judge Wolf's authority.

Adverting to appellant's repeated, seeming insistence that he was entitled to compensation at a flat percentage of trust assets, Judge Wolf reasoned that "[i]t is totally unfair to charge this one trust for litigating compensation issues that apply generally to all the cases in which [appellant] serves as trustee," because "not only is [appellant's] inclusion of [fees related to

---

8. Citing *Williams v. Ray*, 563 A.2d 1077 (D.C. 1989), and *Poe v. Noble*, 525 A.2d 190 (D.C. 1987), appellant argues that both trial courts were obligated to consider explicitly each of the factors cited in the comments to Uniform Trust Code § 708 because "[w]hen determining a fiduciary's compensation based on identified factors, the trial court must consider and make specific findings of fact as to the relevant factors." This argument misapprehends *Williams* and *Poe*. *Williams* cited *Poe* for the principle that where a *statute* specifies particular factors for determining the reasonableness of personal representative compensation, the court must consider those factors when making such a determination. *Williams, supra,* 563 A.2d at 1080 (citing *Poe, supra,* 525 A.2d at 196). Unlike the statute at issue in *Williams* and *Poe,* the text of the

statute at issue here—D.C.Code § 19–1307.08—does not include a list of factors for courts to consider. (The statute at issue in *Williams* and *Poe,* D.C.Code § 20–751(c) (1981), has since been amended and no longer includes a list of factors.) Moreover, the comments to Uniform Trust Code § 708 do not appear in the D.C.Code itself. Thus, although the comments to Uniform Trust Code § 708 are helpful, and although we have traditionally looked-and will continue to look—to the Restatement's provisions for guidance regarding reasonableness of compensation (which are the factors cited in the Uniform Trust Code's comments to § 708), appellant's argument that courts must make specific findings on each of the suggested factors does not persuade us.

the D.M.B. Trust's second accounting and appellant's subsequent appeal] ... a direct violation of a court order, but he asks to be compensated for time spent solely to benefit himself and not the trust beneficiary." (As noted above, Judge Wolf had previously ordered appellant not to charge the trust for any time spent addressing the second accounting, yet appellant sought compensation for significant amounts of time spent doing just that.) Judge Wolf was well within his statutory authority to sanction appellant for breach of duty to the trust by charging the trust for litigation that would benefit only appellant and for violating the court's order not to charge the trust for time spent addressing the previous compensation issue. D.C.Code § 19–1310.01(b)(8).

 Finally, appellant argues that Judge Wolf erred in amending the D.M.B. Trust on the grounds that the court lacked the power to amend a trust under the D.C.Code. Specifically, he argues that the judge could not modify the trust because it did not create the trust, having merely approved an already-drafted trust. While appellant is correct that the trust was "self-settling" in that it was funded by the beneficiary with his own assets, the mere fact that the court approved a pre-prepared document—rather than drafting the trust document itself—cannot be dispositive of the court's authority with respect to the document.

Most significantly, however, appellant's argument ignores the language of the Code providing that the court may modify the terms of a trust under certain circumstances, such as where (a) "because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the trust," D.C.Code

§ 19–1304.12(a) (2008 Supp.) (allowing modification of both "administrative or dispositive terms"); or (b) "if continuation of the trust on its existing terms would be impracticable or wasteful or impair the trust's administration." [9] *Id.* at (b) (allowing modification of "administrative terms" only). Thus, contrary to appellant's assertion, the court need not base its modification on a change in the law that occurred since the trust's approval; rather, the court need only find appropriate circumstances, including avoiding a waste of the trust's assets.

Furthermore, courts may make modifications pursuant to D.C.Code § 19–1304.12 *sua sponte,* if needed. UNIFORM TRUST CODE § 412 cmt. (2005) (noting that "[m]odification under this section ... does not require beneficiary action"); 4 AUSTIN WAKEMAN SCOTT, WILLIAM FRANKLIN FRATCHER, MARK L. ASCHER, SCOTT & ASCHER ON TRUSTS § 24.4.4, at 1674 (5th ed. 2007) ("As a general rule, the court does not act on its own initiative in protecting rights or enforcing duties.... There is, however, a tendency in the United States for a court that has supervision over the administration of a trust to enforce the trustee's duties even though the beneficiaries have not asked it to do so ... [on the grounds that] it is the function of the court to see that the settlor's directions are carried out, even though no one complains to the court; that the court has administrative powers, not just judicial powers; and that once the court acquires jurisdiction over the administration of a trust, it is the court's function to see that the trust is administered in accordance with the settlor's directions.").

Here, Judge Wolf's *sua sponte* modifications are all administrative, and thus are

---

9. Subsection (b) is an application of the requirement in D.C.Code § 19–1304.04 that a trust and its terms must be for the benefit of its beneficiaries. *See* UNIFORM TRUST CODE § 412 cmt (2005).

permitted under either D.C.Code § 19–1304.12(a) or (b) so long as those sections' requirements are met. *See* UNIFORM TRUST CODE § 412 cmt. (2005) ("Subsections (a) and (b) are not mutually exclusive. Many situations justifying modification of administrative terms under subsection (a) will also justify modification under subsection (b).") The judge essentially found that "continuation of the trust on its existing terms would be impracticable or wasteful or impair the trust's administration," D.C.Code § 19–1304.12(b), after concluding that appellant's inclusion of fees related to the previous compensation matter and his subsequent appeal, in direct violation of a court order, and his request for compensation "for time spent solely to benefit himself and not the trust beneficiary," "show[ed] the need, particularly, for this court to scrutinize trustee compensation; and explicitly amend[ ] . . . the trust relevant to the appeal." Indeed, Judge Wolf's amendments—issued in the same order denying appellant compensation from the trust for time spent litigating his compensation issues and sanctioning appellant for violating a court order not to do so—make clear the amendments regarding service of court filings, on-going court supervision, the ability to move the situs of the trust to another state, bonding the trustee, trustee compensation, the ability to assign successor trustees, and trustee liability for breach of fiduciary duty, were made out of concern over the manner in which appellant had been administering the trust to date, especially with regard to trustee compensation. The amendments

were well within the judge's statutory authority.[10]

For the forgoing reasons, the decisions below are

*Affirmed.*

---

10. Contrary to appellant's argument, Judge Wolf's prohibition of "a commission form of [trustee] compensation" in future submissions in the D.M.B. Trust Case was, as the District correctly understands it, a prohibition against appellant seeking compensation based on a percentage basis without regard to hours actually expended, work actually done, and the like. Judge Wolf's own actions in the D.M.B. Trust case belie the notion that a percentage formula may not ultimately be deemed to be an accurate approximation of the compensation earned.