# District of Columbia
# Court of Appeals

**No. 13-PR-1034**

IN RE EDWARD T. SMITH;
    BRUCE E. GARDNER,



CON-101-58

Appellant.

On Appeal from the Superior Court of the District of Columbia
Probate Division

BEFORE:  WASHINGTON, *Chief Judge*; THOMPSON, *Associate Judge*; and
FERREN, *Senior Judge*.

## J U D G M E N T

This case was submitted to the court on the transcript of record and the briefs filed, and without presentation of oral argument.  On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the order on appeal is reversed insofar as it was premised on a contrary interpretation, and the case is remanded to the Superior Court with instructions to reconsider the appellant's petition for compensation.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: May 12, 2016.

Opinion by Associate Judge Phyllis D. Thompson.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-PR-1034

FILED 5/12/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

IN RE EDWARD T. SMITH;
BRUCE E. GARDNER, APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(CON-101-58)

(Hon. Gerald I. Fisher, Trial Judge)

(Submitted February 2, 2016     Decided May 12, 2016)

*Bruce E. Gardner*, pro se.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *Stacy L. Anderson*, Senior Assistant Attorney General, were on the brief for appellee.

Before WASHINGTON, *Chief Judge*, THOMPSON, *Associate Judge*, and FERREN, *Senior Judge*.

THOMPSON, *Associate Judge*: Appellant, Bruce E. Gardner, Esq., asserts in this appeal that he is "entitled to compensation from the Guardianship Fund for the time he spent protecting his rights to compensation in appeals to this Court that are related to his appointment as guardian and the guardianship duties he performed." He seeks a remand to the Superior Court for that court to reconsider his fee petition and "to determine the reasonableness of the compensation" he requested for his

appellate work. For the reasons discussed below, we agree that the Superior Court is authorized to approve compensation to Mr. Gardner for his fee-related appellate litigation work relating to his service as guardian — and, if the ward's assets are depleted, to approve payment to Mr. Gardner from the Guardianship Fund — even if (as appellee District of Columbia contends) "the fee-related litigation was of no benefit to the [particular] ward." We remand to the Superior Court the issue of Mr. Gardner's entitlement to compensation for his appellate work.

## I. Background

As recounted in this court's opinion in *In re Smith*, 99 A.3d 714 (D.C. 2014) ("*Smith I*"), in 2010, the Superior Court issued an order appointing Mr. Gardner as the successor "conservator of the person of Edward T. Smith" to make "decisions with respect to [Mr. Smith's] daily care, medical decisions, and other decisions that are required for him to be made by a court-appointed fiduciary."[1] *Id.* at 717-18. The Certificate of Appointment stated that Mr. Gardner's appointment was made "pursuant to the provisions of D.C. Code, section 21-1506 et seq. (1967 ed.)[.]" *Id.*

---

[1] Mr. Smith had been a ward since 1958, when he was found after a hearing to be of "unsound mind and in need of treatment in a hospital for his mental condition." *Smith I*, 99 A.3d at 715.

at 718. This was notwithstanding the fact that, in 1987, the District of Columbia Guardianship, Protective Proceedings, and Durable Power of Attorney Act, codified at D.C. Code §§ 21-2001 to -2085 (2012 Repl.) (the "Guardianship Act" or the "Act"), was enacted, repealing the statutes in Chapter 15 which had governed conservatorships, and establishing in their place "a comprehensive system of guardianship and conservatorship proceedings to deal with a wide range of legal problems which arise from varying degrees of adult physical and mental incapacity." *Id.* at 716 (quoting Report of the Council, Committee on the Judiciary, on Bill 6-7, at 2 (June 18, 1986)). Among other provisions, the Guardianship Act established a fund (the "Guardianship Fund" or the "Fund") for compensation of conservators, guardians, and other fiduciaries in cases where there are no longer funds available in the ward's estate to pay that compensation. *See* D.C. Code § 21-2060 (a), (b).

Mr. Gardner's conservatorship of the person of Mr. Smith was effectively terminated when Mr. Smith died in 2013. *Smith I*, 99 A.3d at 718. Before that time, however, Mr. Gardner had filed with the court petitions for compensation for his services. *Id.* at 719. Because the aggregate amount of compensation requested in the petitions exceeded the amount of funds remaining in Mr. Smith's estate, Mr. Gardner requested that compensation be paid in part from the Guardianship Fund.

*Id.* The Superior Court denied his petitions because he had been appointed pursuant to the "old law" and not the Guardianship Act. *Id.* Mr. Gardner appealed the denials to this court, and we held in *Smith I* that he was "*eligible* to receive compensation from the Guardianship Fund for services rendered after his appointment in 2010 as conservator of the person" "if there are no longer funds available in the ward's estate to compensate" him. *Id.* at 722.[2] We remanded the case to the Superior Court for a new determination as to whether Mr. Gardner was entitled to payment from the Guardianship Fund for the various services he provided following his 2010 appointment as conservator. *Id.*

Another of Mr. Gardner's petitions for payment (which Mr. Gardner had filed on June 28, 2013) was pending in the Superior Court while his appeals from the orders denying the earlier petitions were pending in this court. On July 22, 2013, before the opinion in *Smith I* was issued, the Superior Court (the Honorable Gerald I. Fisher) denied Mr. Gardner's June 28, 2013, petition for compensation insofar as it would have required payment from the Guardianship Fund, explaining

---

[2] We reasoned that "at least some of the duties performed by Mr. Gardner after the 2010 appointment appear to be those of a guardian[,]" *id.* at 721, that his 2010 appointment as conservator of the person "is properly construed to have been made pursuant to the Guardianship Act[,]" *id.* at 722, and that his "[s]ervice in good faith pursuant to court order is compensable, regardless of whether the probate court erred in making the appointment[,]" *id.* at 722 (quoting *In re Orshansky*, 952 A.2d 199, 210 (D.C. 2008)).

that the denial was "[f]or the reasons that form the bases of the prior denials of his identical requests[.]"[3]

Appellee District of Columbia (the "District"), which filed its brief after the issuance of *Smith I*,[4] agrees that insofar as Judge Fisher's denial of Mr. Gardner's June 28, 2013, petition was premised on Mr. Gardner's putative ineligibility for compensation from the Guardianship Fund, the denial was "contrary to th[is] Court's subsequent decision in *Smith* [*I*]." We therefore need not focus in this appeal on that aspect of Judge Fisher's decision. The parties' ongoing dispute is with respect to Judge Fisher's additional rationale for denying Mr. Gardner's June 28, 2013, petition, which Judge Fisher explained as follows:

> [E]ven were this Court of the view that compensation from the Fund was appropriate, it would deny most of Petitioner's request for compensation. That is because the bulk of the work for which Petitioner seeks compensation is related to his appeal of the prior denials

---

[3] Judge Fisher likewise denied payment from Mr. Smith's estate for any portion of the requested payment that was based on Mr. Gardner's fee-related appellate work. Judge Fisher approved compensation from Mr. Smith's estate for Mr. Gardner's work that was "performed on behalf of [Mr. Smith]" and for expenses that "appear to relate to [Mr. Smith's] care."

[4] On August 20, 2013, Mr. Gardner appealed Judge Fisher's order. Pursuant to the District of Columbia's consent motion, this court held completion of the briefing in the instant case in abeyance and stayed the appeal pending resolution of the *Smith I* appeal.

of his compensation petitions.  That work is of no benefit
to the Ward.

Thus, the issue before us is whether the Superior Court has authority under the Guardianship Act to approve compensation to Mr. Gardner for fee-related appellate work relating to his appointment as guardian.  And, because it appears that the ward's remaining assets are insufficient to cover payment of the requested compensation based on Mr. Gardner's fee-related appellate work,[5] the issue is in part whether the Superior Court has authority under the Act to approve payment to Mr. Gardner from the Guardianship Fund for his work in (successfully) pursuing an appeal from the denial of his earlier petitions for compensation from the Fund.[6] Our review is *de novo*.  *See In re Estate of Green*, 896 A.2d 250, 252 (D.C. 2006) ("Although a trial court's decision to grant or deny a request for fees and costs is

---

[5] Mr. Gardner's brief represents that there is a balance of $4,384.17 in the ward's estate and a denied-compensation balance of $11,450.32 (of Mr. Gardner's original fee request of $18,473.28).

[6] The District articulates the issue not as a question of statutory authority, but as whether the Superior Court "abused its discretion by denying a court-appointed guardian compensation for litigating the issue of his own compensation where such litigation did not benefit the incapacitated ward or his estate."  It is well-established, however, that the trial court may abuse its discretion by "not recogniz[ing] its capacity to exercise discretion or . . . not purport[ing] to exercise it."  *Johnson v. United States*, 398 A.2d 354, 367 (D.C. 1979) (citation omitted). We therefore must address whether the court had discretion under the Act to approve payment to Mr. Gardner for his appellate work without a showing of direct benefit to the ward.

generally reviewed for abuse of discretion, the issue of whether a trial court possesses the statutory authority to award particular fees and costs is reviewed *de novo*.").

For the reasons discussed below, we agree with Mr. Gardner that the Superior Court has authority under D.C. Code § 21-2060 (a) to award him compensation for his work in appealing the Superior Court's prior denials of his petitions for compensation from the Fund for his work as medical guardian of Mr. Smith. Accordingly, we reverse that portion of Judge Fisher's order denying Mr. Gardner's petition for compensation for his appeal work, and remand for further proceedings.

## II. Analysis

Section 21-2060 (a), the Guardianship Act's compensation provision, states in pertinent part that:

> As approved by order of the court, any . . . conservator . . . or guardian is entitled to compensation for services rendered either in a guardianship proceeding, protective proceeding, or in connection with a guardianship or protective arrangement.

D.C. Code § 21-2060 (a). The District argues that under the Guardianship Act, "fee-related litigation is not compensable" and that fiduciaries are not entitled to fees that do not "provide . . . a benefit" to "a ward or his estate."[7] However, given the plain language of § 21-2060 (a), which must be our "starting point for statutory interpretation[,]"[8] we conclude that "benefit to the particular ward" is not the governing standard for every compensation claim.

---

[7] The District relies in part on Super. Ct. Prob. R. 308 (b)(1)(E), which provides that a guardian's or conservator's petition for compensation shall describe "the benefits that accrued to the estate or the subject of the proceeding as a result of the services[.]" We are not persuaded that this rule, which describes what is to be set forth in a petition for compensation, establishes the *sine qua non* for compensation. The District also relies on *Mitchell v. Ensor*, 412 F.2d 155, 160 (D.C. Cir. 1969) (holding that "the compensation to be awarded . . . must be based upon (1) the character of the services rendered, (2) the amount of time spent, (3) the size of the estate administered, and (4) the benefits that accrued to the estate as a result of the services[,]" criteria that "are limited only to the extent of reason"). However, even if it is assumed that *Mitchell* invariably required a showing of benefit to the ward's estate, the opinion predates the Guardianship Act and does not control our interpretation of the Act.

[8] *District of Columbia Office of Tax & Revenue v. Sunbelt Bev., LLC*, 64 A.3d 138, 145 (D.C. 2013) (citing *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) ("The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used.") (internal quotation marks and further citations omitted); *In re Al-Baseer*, 19 A.3d 341, 344 (D.C. 2011) ("The court's task in interpreting a statute begins with its language, and, where it is clear, and its import not patently wrong or absurd, our task comes to an end.") (internal quotation marks omitted).

By its plain language, § 21-2060 (a) authorizes a conservator or guardian to be compensated for services rendered "in connection with a guardianship or protective arrangement." In various contexts, courts have construed the phrase "in connection with" to have a very broad meaning. *See, e.g., Maracich v. Spears*, 133 S. Ct. 2191, 2199 (2013) (stating that the phrase "in connection with" is essentially "'indeterminat[e]' because connections, like relations, 'stop nowhere'") (additional internal quotation marks omitted); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85-86 (2006) (endorsing a "broad" construction of the phrase "in connection with the purchase or sale" of securities); *In re Storey*, No. 08-00198, 2009 Bankr. LEXIS 2547, at *6-7 (Bankr. D.D.C. June 26, 2009) (stating that the scope of the phrase "in connection with the case" in 11 U.S.C. § 329 (a) is "broad"); *Murphy v. Licht*, 195 P.3d 1147, 1151 (Colo. App. 2008) (reasoning that "in connection with" means "logically relating to"). We construe the phrase "in connection with" in § 21-2060 (a) also to have a very broad meaning because it is surrounded by "absolutely no limiting language or restrictive terms." *Estate of Green*, 896 A.2d at 252. For that reason and for the reasons discussed below, we are persuaded that the phrase as used in § 21-2060 (a) has a broad enough meaning to permit the Superior Court, in its discretion, to approve compensation for a conservator or guardian's work on an appeal in pursuit of a claim for compensation even if there is no benefit to the guardian's particular ward.

In *Maracich*, the Supreme Court admonished that the phrase "in connection with" "provides little guidance without a limiting principle," which must be discerned by reference to "the structure of the statute and its other provisions." 133 S. Ct. at 2200; *see also New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995) ("We simply must go beyond the unhelpful text and the frustrating difficulty of defining ['in connection with'], and look instead to the objectives of the . . . statute"). Consistent with that admonition, we look to the objectives of the Guardianship Act, which are expressed in D.C. Code § 21-2001 (b): The underlying purposes and policies of this chapter are to:

> (1) Simplify and clarify the law concerning the affairs of missing individuals, protected individuals, and incapacitated individuals;
>
> (2) Promote a speedy and efficient system for managing and protecting the estates of protected individuals so that assets may be preserved for application to the needs of protected individuals and their dependents; and
>
> (3) Provide a system of general and limited guardianships for incapacitated individuals and coordinate guardianships and protective proceedings concerned with management and protection of estates of incapacitated individuals.

D.C. Code § 21-2001 (b)(1)-(3).  Further, the Act is to be "liberally construed and applied to promote its underlying purposes and policies."  *Id.* § 21-2001 (a).


We have little trouble concluding that the compensation-appeal-related work for which Mr. Gardner seeks compensation from the Guardianship Fund assisted in "clarify[ing] the law" concerning guardianships, *id.* § 21-2001 (b)(1), because the appeal established, through the opinion in *Smith I*, that an individual who was appointed by the court without explicit reference to the Guardianship Act, but who in good faith performed the duties of a guardian, is eligible to receive compensation from the Guardianship Fund.   Moreover, construing the Act liberally, we conclude that allowing compensation for work on an appeal related to a compensation claim can be reasonably thought to benefit wards and prospective wards generally (even if not any particular ward) by fostering the availability of guardians, who may be more willing to serve with the understanding that they can be compensated for their work in protecting their right to compensation.[9]  In that

---

[9]  In that sense, compensation for the guardian's appellate work relating to his fees is not, as the District argues, "hostile to the ward."  We have previously noted our reluctance to embrace an interpretation of the Guardianship Act that could make it harder for "those seeking guardians or conservators for low-income individuals . . . to secure the assistance of counsel."  *In re Estate of Grealis*, 902 A.2d 821, 827 (D.C. 2006); *cf. In re Guardianship of Miles*, 660 N.W.2d 233, 238-39 (S.D. 2003) ("[I]f the fees for services of an attorney employed by the [guardian] are necessarily incurred in the administration of the trust, that this is

(continued…)

way, allowing compensation for appeal work assists in "[p]rovid[ing] a system of general and limited guardianships for incapacitated individuals[.]" D.C. Code § 21-2001 (b)(3). To be sure, there may be circumstances in which the Superior Court may discern that allowing a claim for compensation for work on fee-related appellate litigation would not serve these objectives, such as where a guardian unsuccessfully pursues on appeal a claim for reimbursement that the Superior Court has rejected as unreasonable in amount, or where a conservator appeals from an order surcharging him for mismanagement of a ward's assets.[10] Nothing in this opinion would cabin the trial court's discretion to deny such a claim.

This court's opinion in *Estate of Green* furnishes support for our conclusion. In that case, a surety had appealed from the trial court's decision approving, and requiring the surety to pay, a special master's claim for compensation for her work relating to a decedent's estate. 896 A.2d 251-52. After this court affirmed the trial court's ruling requiring the surety to pay the special master, the special master filed a supplemental petition for compensation for services related to her defense of the appeal. *Id.* at 251. We reversed the Superior Court's denial of the supplemental

_____

(…continued)

sufficient to authorize their allowance *without a showing of benefit to the estate*.") (italics added).

[10] *See* D.C. Code § 21-2074 (d).

petition, explaining that the language of the relevant rule (Super. Ct. Civ. R. 53 (a)) gave the Superior Court "broad authority to compensate the special master for *any and all* fees and costs associated with and related to her court mandated duties," *id.* at 252-53 (emphasis in original), and observing that the special master was "*required* to defend against the appeal in order to protect her right to fair compensation[]" for her services, *id.* at 253 (emphasis added). Of particular note, we reasoned that the special master's appellate work was "directly related to and associated with her role as a special master." *Id.* We see no reason why it would be "patently wrong or absurd," *Al-Baseer*, 19 A.3d at 344, to interpret § 21-2060 (a) to authorize a similar result in this case. Like the special master in *Estate of Green*, Mr. Gardner was required to prosecute his appeal in order to protect his right to fair compensation.[11] That the special master sought reimbursement from the surety for her work as an *appellee*, while Mr. Gardner seeks compensation from the Guardianship Fund for his work as an *appellant*, does not negate the fact

---

[11] We further note that the Guardianship Act states that "[u]nless displaced by the particular provisions of this chapter, the principles of law and equity supplement its provisions." D.C. Code § 21-2002 (a). We conclude that "on general principles of law and equity," appellant is entitled to have the Superior Court consider his claim for compensation for "the reasonable value of the work he performed" in protecting his right to compensation. *Mason v. Rostad*, 476 A.2d 662, 666 (D.C. 1984).

that in the instant case, as in *Estate of Green*, the appellate work was "directly related to and associated with" the claimant's court-appointed role.[12]

The District relies on this court's opinion in *In re D.M.B.*, 979 A.2d 15 (D.C. 2009), in which we held that the Superior Court did not abuse its discretion in disallowing the trustee's time that "appeared to represent charges to the Trust for the time appellant had spent working on his challenges to the court's rulings on his earlier fee petitions, including time spent consulting with his appellate counsel regarding . . . a Trust accounting[]." *Id.* at 19. We specifically noted in that case, however, that the Superior Court judge "previously ordered appellant not to charge the trust for time spent addressing the judge's previous compensation matter." *Id.* at 23. We held that "[i]n light of the court's prior order, we [could not] say that the judge abused his discretion in disallowing compensation for time spent by appellant in disagreeing with the judge's analysis of the compensation issue." *Id.* Thus, *D.M.B.* does not stand for the more general principle (i.e., that fiduciaries are

---

[12] *Cf. Merkle v. Weems* (*In re Guardianship of K.R.C.*), 83 So. 3d 932, 933-34 (Fla. Dist. Ct. App. 2012) ("When court proceedings are instituted to review or determine a guardian's . . . fees . . . , such proceedings are part of the guardianship administration process and the costs, including fees for the guardian's attorney, shall be determined by the court and paid from the assets of the guardianship estate unless the court finds the requested compensation . . . to be substantially unreasonable.").

not entitled to be compensated for litigation related to their own compensation) for which the District cites it, and does not undermine our analysis above.[13]

### III. Conclusion

The Guardianship Act authorizes a conservator or guardian to be compensated from the Guardianship Fund for services in connection with a guardianship, and contains no limiting language or restrictive terms other than that the compensation promote the underlying purposes and policies of the Act. We

---

[13] The other cases the District cites also do not stand for such a broad proposition. *See In re Guardianship of Lamb*, 265 P.3d 876, 885 (Wash. 2011) (express language of statute excluded fees for time spent on "litigating an award of guardianship fees or costs"); *Whittlesey v. Aiello*, 128 Cal. Rptr. 2d 742, 748 (Cal. Ct. App. 2002) (affirming denial of the trustee's claim for his litigation expenses because he "was representing the interests of one side of the dispute [between competing trust beneficiaries] over the other, not representing the interests of the trust or the trustee"); *Raszler v. Raszler*, 81 N.W.2d 120, 123-24 (N.D. 1957) (rejecting trustee's claims for attorney's fees where the trustee was attempting to "absolve himself from liabilities to the trust fund"); *Ellis v. King*, 83 N.E.2d 367, 371 (Ill. App. Ct. 1949) (disallowing attorney's fees where trustees' "recalcitrance and dereliction in their duties" were cause of litigation). *But see In re Sloan Estate*, 538 N.W.2d 47, 49-50 (Mich. Ct. App. 1995) (holding that "the ordinary fees and costs incurred in establishing and defending a fee petition are inherent in the normal course of doing business as an attorney, and the [probate] estate may not be diminished to pay those fees and costs[,]" but not rejecting the validity of the argument, embraced by the Supreme Court of California, that "precluding 'fees for fees' claims may have a deleterious effect on the ability of an estate to retain qualified and competent counsel in the absence of assurance that counsel will receive adequate compensation" (citing *Estate of Trynin*, 782 P.2d 232, 264 (Cal. 1989))).

hold that the Act authorizes the Superior Court in its discretion to approve a petition for compensation based on a conservator's or guardian's fee-related appellate work, even without a showing of benefit to the particular ward. Accordingly, we reverse the order on appeal insofar as it was premised on a contrary interpretation and remand this case to the Superior Court with instructions to reconsider Mr. Gardner's petition for compensation.

*So ordered.*