*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

### 19-PR-1203

IN RE MARY WILSON; BRUCE E. GARDNER, APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(INT-380-08)

(Hon. Alfred S. Irving, Jr., Petition Judge)

(Submitted January 5, 2021                    Decided July 7, 2022)

*Bruce E. Gardner*, pro se.*

Before BECKWITH and MCLEESE, *Associate Judges*, and THOMPSON,** *Senior Judge*.

BECKWITH, *Associate Judge*:  Appellant Bruce Gardner challenges the trial court's order denying a substantial portion of his request for compensation for guardianship services he provided to Mary Wilson.  We remand the case for further

---

* Ms. Wilson has not filed a brief in this appeal.

** Senior Judge Thompson was an Associate Judge of the court at the time of submission.  On October 4, 2021, she was appointed as a Senior Judge but she continued to serve as an Associate Judge until February 17, 2022.  *See* D.C. Code § 11-1502 & 1504(b)(3) (2012 Repl.).  On February 18, 2022, she began her service as a Senior Judge.  *See* D.C. Code § 11-1504.

proceedings.

## I.

Bruce Gardner was appointed as guardian for Mary Wilson in July of 2016. This appeal involves Mr. Gardner's third petition for fees pertaining to his guardianship of Ms. Wilson—this one seeking compensation for services he provided from July 2018 to July 2019. Specifically, Mr. Gardner sought $9,108.00 in fees for 100.9 hours billed at $90 per hour and costs of $347.78. The trial court awarded Mr. Gardner $6,400.35 in fees and $206.65 in costs after determining that some of Mr. Gardner's requests were excessive and that others stemmed from noncompensable tasks. The trial court denied his motion for reconsideration, and Mr. Gardner now appeals to this court.

## II.

The compensation of court-appointed guardians is governed by D.C. Code § 21-2060 (2012 Repl. & 2022 Supp.) and implemented by Superior Court Probate Rule 308. *In re Brown*, 211 A.3d 165, 167 (D.C. 2019). In relevant part, the statute states that "[a]s approved by order of the court," an attorney "is entitled to compensation for services rendered either in a guardianship proceeding, protective proceeding, or in connection with a guardianship or protective arrangement." D.C.

Code § 21-2060(a).  A guardian seeking compensation must file a petition setting forth "in reasonable detail" the amount of time spent on services, the basis of any hourly rates, and "the character and summary of the service rendered."  Super. Ct. Prob. R. 308(b)(1).  The trial court must then determine whether the compensation request is reasonable.  *Id.*  "We review the denial of a compensation request for abuse of discretion and review the underlying legal principles de novo."  *In re Robinson*, 216 A.3d 887, 890 (D.C. 2019).  We will remand where the trial court has made insufficient factual findings or failed to adequately explain the bases for its conclusions.  *See In re Estate of McDaniel*, 953 A.2d 1021, 1023–24 (D.C. 2008).

## A. Travel

Approximately a quarter of the total amount Mr. Gardner requested in his fee petition was for the time he spent traveling from his home office in Bowie, Maryland, to locations in the District where he met with Ms. Wilson, primarily at Serenity Rehabilitation and Health Center, which is on the Maryland border in southeast D.C.  The trial court agreed that Mr. Gardner was entitled to be compensated at a rate of $90 an hour from the Guardianship Fund "for reasonable

and necessary travel,"[2] but the court reduced by half the $2,175.30 Mr. Gardner had requested for such travel because the court "require[d] attorneys to calculate travel from their District of Columbia offices, when they live or have offices outside of the District of Columbia, or otherwise from the Courthouse." In the court's view, Mr. Gardner's expenditures "seem[ed] excessive" given that Mr. Gardner took eight-tenths of an hour to travel 21 miles from Bowie to Serenity when the distance from Mr. Gardner's District of Columbia office to Serenity was roughly 8 miles. The court noted that requiring time to be calculated from an attorney's D.C. office address was consistent with the guidelines governing the compensation of attorneys appointed to represent indigent criminal defendants under the Criminal Justice Act (CJA),[3] which state, in relevant part, that "[w]here travel time to a destination from an attorney's home or office is greater than the time from the courthouse to that destination, the attorney is only entitled to the lesser of those times."

Mr. Gardner challenges the trial court's decision to reduce by 50 percent his compensation request for time and mileage spent traveling and, in particular, the court's reliance upon the CJA guidelines in computing guardians' travel time. Mr.

---

[2] *See In re Goodwin*, No. 19-PR-1065, 2022 WL 1670729, at *3 (D.C. May 26, 2022) (noting that the D.C. Courts' Joint Committee on Judicial Administration capped compensation from the Guardianship Fund at a rate of $90 per hour).

[3] *See* Voucher Preparation Guidelines for Attorney's Appointed Under the District of Columbia Criminal Justice Act.

Gardner contends that travel time and mileage should be computed from his home office for numerous reasons—including that his D.C. address is not an actual office but only a mailing address; that other judges addressing earlier fee petitions in this case have granted requests for fees based on travel time from Mr. Gardner's home office in Bowie (and that the judge in this case also did so in a different guardianship matter); that Bowie is within an area—the Washington metropolitan area—that is deemed to be local in various other relevant contexts; that it does not make sense to apply CJA guidelines to guardians who, unlike criminal defense lawyers, do not typically do their jobs at the courthouse; and that it actually would have cost more if he traveled to visit Ms. Wilson from his D.C. address or the courthouse because he would take public transportation from Bowie into the District and from there, using Uber or taking the Metro to visit Ms. Wilson would either have cost more or taken more time than driving from Bowie.

Ideally, people appointed to be guardians would be able to consult uniform rules and policies in preparing their petitions for fees from the Guardianship Fund. They would know what categories of costs and fees the court will and will not compensate.[4]   The Superior Court as yet has no rules of this sort for computing

---

[4] The Superior Court does have some guidelines setting forth presumptive maximum hourly rates it will pay guardians from the Guardianship Fund. *See supra* note 2.

travel, and the trial court here looked to the CJA guidelines. It gave specific reasons for using the CJA guidelines to measure travel time and mileage, noting that the guidelines' concern about subsidizing attorneys who live far away from the District was consistent with the court's "general obligation to ensure that the taxpayer funded Guardianship Fund is tapped responsibly." We do not endorse the full-fledged adoption of CJA guidelines in guardianship matters. Yet in the absence of specific guidelines geared explicitly to appointed guardians, we are also not inclined to conclude that a trial court's consideration of the CJA guidelines as a relevant analogy for evaluating the reasonableness of travel expenses is an abuse of discretion.

A remand is nevertheless in order for several reasons. First, although the trial court was unwilling to guess how long it would have taken Mr. Gardner to travel to Serenity from an address in the District,[5] it is difficult for us to evaluate the reasonableness of its ruling in this regard without a better understanding of its decision to reduce the expenditures by half, rather than by some other number, and

---

[5] In deducting half of Mr. Gardner's travel expenses, the trial court stated that it would not "hazard a guess about the time it takes to travel 21 miles outside of the District of Columbia to a location within the borders of the District of Columbia vis-à-vis the time it takes to drive eight miles within the District of Columbia." The court added that it had "no information about the time of day the travel took place, which could have affected travel time, but the expenditures seem excessive."

without an explanation of whether and how this reduction affects the submitted costs for mileage.[6] It is also unclear how the trial court determined Mr. Gardner's travel time from Maryland was the "greater" under the CJA guidelines. Mr. Gardner's contention that his travel expenses from Bowie to Serenity *were* less than what they would have been from his D.C. address or the courthouse to Serenity seems relevant to the assessment required by the CJA guidelines the court purported to rely on.

Second and relatedly, because the trial judge here has in at least one other case granted Mr. Gardner's petition for fees and costs for travel to and from an office in

---

[6] On remand, the court should also address the travel time and mileage Mr. Gardner states he inadvertently omitted from the fee petition. Mr. Gardner raised this for the first time in his motion for reconsideration. The trial court denied the motion in a one-page order but did not indicate the basis for disallowing payment for these late additions to the fee petition. Remand is also in order to address Mr. Gardner's contention that the trial court miscalculated the amount he was owed in preparing the fifth guardianship report. We do not find that the court abused its discretion in deeming the submitted expense for this task to be excessive. The court supported that conclusion by noting that the report was three pages long and largely duplicative of the summaries Gardner provided. The court appears to have erred, however, in calculating its reduction of the fee. The court found that the 3.8 hours requested for filing a three-page report was excessive and only allowed Mr. Gardner compensation for two hours. The trial court deducted $297, but at an hourly rate of $90, a deduction of 1.8 hours presumably should have resulted in a deduction of $162.

Prince George's County,[7] the court should clarify the reasoning underlying its reliance upon the CJA guidelines in some cases and not others.[8] "Without such an explanation, our court cannot assess whether the Superior Court reasonably exercised its discretion." *In re Gardner*, 268 A.3d 850, 859 (D.C. 2022).

And finally, it is unclear to what extent the trial court relied upon a possibly inaccurate factual conclusion—namely, that Mr. Gardner has an office on Pennsylvania Avenue in the District of Columbia. *See In re Mary Wilson*, No. INT 380-08, at 2 (D.C. Super. Ct. Sept. 17, 2019) (stating that "Mr. Gardner has a District of Columbia office located at 1101 Pennsylvania Avenue, NW, Suite 300, Washington, DC 20004"). According to Mr. Gardner, he has an arrangement to

---

[7] In *Goodwin*, 2022 WL 1670729, the same trial judge who addressed the petition at issue in the present case rejected Mr. Gardner's request for $300 an hour for travel time (cutting it to $90) but did not question Mr. Gardner's calculation of mileage and time from an office in Prince George's County. On appeal, this court remanded for further proceedings regarding Mr. Gardner's use of a dummy address in Mitchellville, Maryland, as opposed to his actual home office in Bowie, Maryland, but like the trial court, did not question the propriety of petitioning for fees for travel time from an actual office in the Maryland suburbs of the District. *Id.* at *4–5.

[8] In doing so, the court should consider Mr. Gardner's argument that the provision in the CJA guidelines requiring attorneys to measure travel from the courthouse is uniquely suited to CJA attorneys, who mostly work at the courthouse, but a poor fit for guardians, who are required by statute to visit their wards in their homes and health care facilities and who rarely travel to the courthouse.

receive mail at the Pennsylvania Avenue address but has no physical office there and does not work there.[9] The trial court appeared to assume Mr. Gardner had an actual office in D.C. that he could work out of, and we are unsure whether and to what extent the court's ruling would have been affected by information that Mr. Gardner's home office in Bowie was his only office that functioned as an office. The court should clarify this on remand.

## B. Time Spent on Other Tasks

Mr. Gardner also argues that the probate court erred in denying him compensation for the time he spent preparing summaries of services he performed and the time he took to electronically file several documents over the course of the year for which he was seeking fees. His fee petition contained nine entries involving the summaries, totaling 12.8 hours of work at a rate of $90 per hour for a total of $1152. For seven of the nine entries, Mr. Gardner described them as "prepared summary of description of services provided to date."[10] Mr. Gardner further requested $18 for each instance in which he spent two-tenths of an hour

---

[9] Mr. Gardner proffered this in his motion for reconsideration and states it again in his brief on appeal.

[10] The other two entries were "[p]repared May detailed summary of guardianship services provided" and "[u]pdated detailed summary description of guardian services provided to date."

electronically filing (1) his fifth guardianship report on December 31, 2018; (2) his sixth guardianship report on July 2, 2019; and (3) his fee petition on July 5, 2019.

With respect to the summaries, the trial court found that their compilation was a clerical, noncompensable task and that Mr. Gardner's method of updating his files was "excessive and redundant." As to electronic filing, the court ruled that Mr. Gardner would properly be compensated for the *costs* associated with filing (such as the filing fee), but that the time spent actually performing the electronic filing was a clerical act that in the court's view was noncompensable.[11] In reaching this conclusion, the trial court relied upon the unpublished (and nonprecedential) decision in *In re Williams*, No. 15-PR-1145, Mem. Op. & J. (D.C. July 7, 2017), in which this court affirmed the trial court's disallowance of fees for certain clerical work—including "filings with the court"—where it was not appropriate to award "attorney (or even paralegal) rates" for such tasks and where "appellant never suggested any appropriate lower rate." *Id.* at 6.

---

[11] For similar reasons the trial court denied compensation for "reading notifications." While it is less than clear which particular entries on the fee petition the court deemed to involve "reading notifications," Mr. Gardner does not specifically challenge their disallowance on appeal and focuses instead on electronic filing.

The Guardianship Act authorizes a guardian to be paid from the Guardianship Fund for services he rendered "in connection with a guardianship," D.C. Code § 21-2060(a)—language we have deemed to "have a very broad meaning" in identifying the services for which a guardian is entitled to be compensated.[12] *In re Smith*, 138 A.3d 1181, 1185 (D.C. 2016); *see also id.* at 1188 (stating that the Act "contains no limiting language or restrictive terms other than that the compensation promote the underlying purposes and policies of the Act"). We have held, for example, that the trial court has discretion to compensate a guardian for "work on an appeal in pursuit of a claim for compensation," *id*. at 1185, and that a guardian need not show that the ward benefited from a task for it to be compensable, *id.*

As to administrative tasks in particular, our cases have grappled with—or mentioned but declined to grapple with—what rates a guardian might reasonably charge for tasks that are largely administrative. *See, e.g., In re Gardner*, 268 A.3d at 859; *In re Orshansky*, 952 A.2d 199, 211 (D.C. 2008). But they evince few qualms about the Act's compensation of administrative tasks as a general matter. *See In re Brown*, 211 A.3d at 169 n.5 (describing clerical tasks as tasks not compensable *as*

---

[12] Mr. Gardner aptly notes that electronic filing is mandated by administrative order. *See* Super. Ct. Admin. Order 18-12. Mr. Gardner also states that "the probate division informed all Fiduciary Panel Members that they would be reimbursed for time and expenses related to e-filing."

*attorney's fees*). While not controlling, even *Williams*—the unpublished opinion the trial court relied upon in denying Mr. Gardner's request for compensation for the time he spent filing his reports and petitions electronically—itself suggests that such tasks would be compensable, albeit at a rate lower than what attorneys charge. *In re Williams*, Mem. Op. & J. at 6; *see also In re Orshansky*, 952 A.2d at 211. The notion of a blanket rule precluding a guardian from seeking compensation for tasks that might be called administrative or clerical is at odds with our "expansive view of the kind of duties that are compensable under the Act," *In re Weaks*, 224 A.3d 1028, 1034 (D.C. 2020). It is also at odds with the requirement in Super. Ct. Prob. R. 308 that guardians prepare reasonably detailed fee petitions that include "the character and summary of the service rendered."

The trial court has discretion, of course, to deny or reduce a fee request it does not deem reasonable, and that includes a fee for time spent on administrative tasks. Yet while the trial court characterized the fees for preparation of the summaries as "excessive"—the sort of ground on which the court has discretion to reduce or deny fees—the court plainly suggested that it viewed those fees as well as the fees for electronic filing as noncompensable clerical tasks that it was categorically denying. Because the court appeared to impose a flat rule prohibiting compensation for "clerical" tasks such as electronic filing and the preparation of summaries for a fee petition, and because the Guardianship Act authorizes payment for such services, we

remand to allow the trial court to determine the reasonableness of the requested compensation in light of our conclusion that they are, in fact, compensable. *See, e.g.*, *In re Estate of McDaniel*, 953 A.2d at 1024-25.

Mr. Gardner next argues that the trial court erroneously denied his request for $54 for the time spent taking Ms. Wilson to breakfast at McDonald's rather than waiting outside an apartment for the people who were supposed to show the apartment to Ms. Wilson but who were delayed in getting there. In his petition for fees, Mr. Gardner characterized the expenditure as "treating ward to breakfast to encourage conversation, disclosures, and become better acquainted with the ward." The trial court denied the request because, in its view, "[s]uch personal services are not compensable and the Guardianship Fund cannot be used for such services."

Contrary to the court's characterization of "such personal services" as noncompensable, this court has made clear that "core aspects of a guardian's services" are indeed "interpersonal in nature." *In re Robinson*, 216 A.3d at 891. "A number of the general guardianship duties are aimed at ensuring that the guardian has enough regular contact with the ward that the guardian has an up-to-date understanding of the ward's physical and mental health . . . ." *Id.* Mr. Gardner's trip to McDonald's with Ms. Wilson while they waited for people from Pathways to Housing and the Department of Aging to arrive to allow Ms. Wilson to view an

available apartment fit squarely within a guardian's statutory duty to remain acquainted with his ward. D.C. Code § 21-2047(a)(1) (providing that a guardian shall "[b]ecome or remain personally acquainted with the ward and maintain sufficient contact with the ward to know of the ward's capacities, limitations, needs, opportunities, and physical and mental health"). This brief detour while waiting to be shown an apartment is also difficult to separate from the day's main and indisputably legitimate objective of helping Ms. Wilson secure housing. *See* D.C. Code § 21-2047(b)(2) (describing one of a guardian's duties as "establishing the ward's place of abode"). We therefore reverse the trial court's conclusion that this type of expense was, as a rule, noncompensable. We leave it to the trial court to determine, on remand, whether the submitted fee was otherwise reasonable.[13]

### C. 30-Day Deadline

Finally, Mr. Gardner argues that because the trial court took fifty days to decide his fee petition when Super. Ct. Prob. R. 308(i)(1) states that the Superior

---

[13] The $54 figure the trial court used when referring to the McDonald's-related fee requests would include $45 for the half hour spent at the restaurant and $9 for only one of the two trips between the restaurant and the apartment. According to the petition, each of the legs of the round trip took one-tenth of an hour (charged at $9), and it is unclear why the expenses for this entry would not cover both. To make matters more confusing, the fee petition includes what may be a duplicative entry claiming an additional $45 for the half hour of time spent at McDonald's. The trial court may sort this out on remand.

Court "shall enter an order" resolving a request for fees from the Guardianship fund under "within 30 days of the filing of such request," he is entitled to the full amount requested plus pre-award interest. This court recently considered and rejected these arguments in *In re Goodwin*, 2022 WL 1670729, and its analysis is controlling here. In *Goodwin*, the court stated that although Rule 308(i)(1) imposes a thirty-day deadline, the probate rules do not explain the consequence for failure to resolve a fee request within the thirty days, and courts "will not in the ordinary course impose their own coercive sanction." *Id.* at *4 (quoting *Dolan v. United States*, 560 U.S. 605, 611 (2010)). Here, as in *Goodwin*, Mr. Gardner "points us to nothing that would authorize or compel us to depart from that baseline rule and impose the novel remedies he now seeks—awarding him a windfall from the public fisc." *Id.*; *cf. also In re Gardner*, 268 A.3d at 858 (rejecting a similar argument where Mr. Gardner was seeking payment from the ward's estate rather than the Guardianship Fund). This conclusion encompasses Mr. Gardner's request for pre-award interest[14] as well as for the full amount requested in his petition.

---

[14] We are in any event not persuaded by Mr. Gardner's contention that his fee petition counts as a liquidated debt and that D.C. Code § 15-108 "mandates prejudgment or pre-award interest for liquidated debt." D.C. Code § 15-108 states that "[i]n an action . . . to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on

**III.**

For the foregoing reasons, we reverse the trial court order in part and remand the case for further proceedings consistent with this opinion.

*So ordered.*

---

the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid." Mr. Gardner does not satisfy these threshold requirements. He is not suing to recover a debt but rather appealing the denial of a fee petition that requires court approval. He does not have a contract. The Guardianship statute does not provide for the payment of interest for court-appointed guardians. And Mr. Gardner points to no analogous cases indicating that interest on delayed payment of fees was payable by usage. *See Wash. Inv. Partners of Del., LLC v. Sec. House, K.S.C.C.*, 28 A.3d 566, 581 (D.C. 2011) ("Payable by usage refers to what is customary or usual under similar or comparable circumstances, such as where such interest had been held to be recoverable in a case which was viewed as analogous in principle.") (quoting *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1255 (D.C.1990)) (cleaned up).