*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-PR-0916

IN RE SALLY R. GLASS;
TAMARA MCDOWELL CHRISTIAN, APPELLANT.

Appeal from the Superior Court
of the District of Columbia
2020-INT-000175

(Hon. Laura A. Cordero, Trial Judge)

(Submitted Nov. 9, 2023                    Decided July 11, 2024)

*Tamara McDowell Christian*, pro se.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and EASTERLY and SHANKER,* *Associate Judges*.

EASTERLY, *Associate Judge*: Appellant Tamara McDowell Christian was

appointed to represent Sally Glass in a proceeding before the Superior Court, Probate

---

* Associate Judge AliKhan was originally assigned to this case. Following her appointment to the U.S. District Court for the District of Columbia, effective December 12, 2023, Associate Judge Shanker has been assigned to take her place on the panel.

Division, to determine if Ms. Glass required a general guardian. Ms. Christian received an adverse ruling and appealed it to this court on Ms. Glass's behalf, and she subsequently sought payment for her work on that appeal. The Probate Court denied this request on the ground that it was unauthorized. We hold that, when counsel is appointed by the Probate Court to represent an allegedly incapacitated individual in a discrete matter such as the appointment of a guardian, counsel has an obligation to zealously advocate for their client through an appeal of that matter and has a corresponding entitlement to be paid for their work on appeal. Accordingly, we reverse and remand.

## I.     Factual and Procedural Background

In July 2020, the Superior Court, Probate Division, appointed Ms. Christian as counsel for Ms. Glass regarding a Petition for Appointment of a General Guardian for Ms. Glass. In pertinent part, the order appointing Ms. Christian stated, "[c]ounsel shall perform the duties set forth in D.C. Code, sec. 21-2033(b) and the

duties set forth in Superior Court, Probate Division Rule 305 [now Rule 307][1] that are consistent with this statutory provision and shall represent the subject at the hearing." After a two-day evidentiary hearing, the Probate Court found Ms. Glass to be an incapacitated individual and issued an order, dated July 23, 2020, granting the petition to appoint a general guardian.

Ms. Christian subsequently timely filed a Notice of Appeal in Superior Court

---

[1] The Superior Court Probate Rules were amended in August 2022. The duties and obligations of counsel, which prior to August 2022 were set forth in Rule 305, are now codified at Rule 307. Both the pre- and post-August 22, 2022 rules are available at https://www.dccourts.gov/superior-court/rules; https://perma.cc/AXB6-DH57. With an eye toward providing guidance going forward, we cite only to the post-2022 amended rules in the body of this opinion, except where, as here, we are quoting directly from a Probate Court order issued under the older version of the rules.

at the behest of Ms. Glass.[2]  In this document, Ms. Christian identified herself as a "Fiduciary Panel Member paid through the Guardianship Fund."  Ms. Christian also filed in the Superior Court a Motion to Waive Costs and Fees to obtain transcripts of the July hearing and an Application to Proceed without Prepayment of Costs, Fees, or Security (In Forma Pauperis).  Ms. Christian's motion stated that this request was made "in order to start the appeals process on behalf of [Ms.] Glass."  The Probate Court (Demeo, J.)[3] granted both the motion for transcripts and the In Forma Pauperis application.  In June 2021, Ms. Christian filed a brief with this court

---

[2] Ms. Christian stated in the Notice of Appeal that she was "requesting that the D.C. Court of Appeals appoint another fiduciary panel member to handle the appeal . . . ."  Pursuant to the District of Columbia Guardianship, Protective Proceedings, and Durable Power of Attorney Act of 1986 ("The Guardianship Act"), D.C. Code §§ 21-2001 to 21-2098, the fiduciary panel was established and is maintained by the Superior Court.  *See* D.C. Superior Court Admin. Order Nos. 15-18, Re-establishment of the Probate Fiduciary Panel (Sept. 14, 2015), 17-08, Applications to the Probate Fiduciary Panel (April 20, 2017), 17-09, Re-Establishment of the Probate Panel Implementation Committee (April 20, 2017), and 24-01, Extension of Deadline for Acceptance of Applications for New Members of the Probate Fiduciary Panel (Jan. 31, 2024) (all available at https://www.dccourts.gov/services/probate-matters/probate-court-appointments; https://perma.cc/KS4M-LKKP); *see also infra* note 4.  This court plays no role in the fiduciary panel's administration.  There is no evidence in the record that either this court or the Superior Court acknowledged or responded to Ms. Christian's request for the appointment of new counsel for appeal, but this is unsurprising since a notice of appeal is not the proper vehicle to make such a request.  *See* D.C. App. R. 3(c) (specifying the contents of a notice of appeal); D.C. App. R. 27 ("An application for an order or other relief is made by motion unless these rules prescribe another form.").

[3] On December 31, 2020, Ms. Glass's case was transferred from Judge Marisa Demeo to Judge Laura Cordero.

on behalf of Ms. Glass. In July 2022, we issued an unpublished decision affirming the Probate Court's appointment of a general guardian for Ms. Glass.

Meanwhile, in September 2020, the court-appointed general guardian requested an emergency status hearing and the Probate Court appointed Ms. Christian to represent Ms. Glass at this hearing. Shortly after the emergency hearing, in November 2020, the court-appointed general guardian filed a Motion to Resign as Guardian, and on January 27, 2021, the Probate Court appointed a successor general guardian for Ms. Glass.

Pursuant to D.C. Code § 21-2060, which requires the Superior Court to approve payment to all court-appointed actors in probate proceedings, Ms. Christian sought compensation from the Superior Court's Guardianship Fund for her work on

behalf of Ms. Glass in three separate, unopposed Petitions for Compensation.[4] In November 2020, she filed two petitions requesting compensation for her work in the Probate Court regarding (1) the guardianship proceeding for Ms. Glass and (2) the emergency status hearing. Both of these petitions were approved by the Probate Court (Demeo, J.).

In August 2022, after this court affirmed the Probate Court's ruling appointing a guardian for Ms. Glass, Ms. Christian filed a third petition in Superior Court requesting compensation for her work relating to Ms. Glass's appeal. The Probate Court (Cordero, J.) denied this petition. The court explained that Ms. Christian's appointment to represent Ms. Glass in the guardianship proceeding had terminated

---

[4] The Superior Court must award compensation for all services by "any case reviewer, visitor, attorney, examiner, conservator, special conservator, guardian ad litem, or guardian," D.C. Code § 21-2060, whether that compensation comes from the estate of the person or ward who is the subject of the probate proceeding, or from the Guardianship Fund if there is no estate or the estate would be depleted by such payments. *See* D.C. Code § 21-2060(b) (establishing "within the General Fund of the District of Columbia a separate account to be known as the 'Guardianship Fund' . . . to be administered by the court"); D.C. Code § 21-2011(2) (defining the "court" as "the Superior Court of the District of Columbia"). The Superior Court's oversight both fulfills the purpose of the Guardianship Act to "[p]romote a speedy and efficient system for managing and protecting the estates of protected individuals so that assets may be preserved for application to the needs of protected individuals and their dependents," D.C. Code § 21-2001(b)(2), and protects the public fisc, *see In re Grooms*, 123 A.3d 976, 979 (D.C. 2015) (noting the public's interest in the "resolution of petitions for compensation, since the compensation is drawn from a taxpayer-funded source when the ward's estate has been depleted").

on July 23, 2020, the date the trial court had issued its ruling granting the petition to appoint a guardian.

In support of its decision, the Probate Court quoted newly amended Probate Rule 307(e), which provides that, "[u]nless otherwise ordered by the court, the appearance of counsel for the subject or ward terminates upon the disposition of the petition for which counsel's appearance was entered."[5]  The court further stated, "[t]he D.C. Superior Court does not have the authority to approve compensation for fees requested beyond the scope of Court appointments[,] . . . [and] the Court's budget and Guardianship Fund only possess sufficient funds as to compensate court-appointees for the duration of their appointment, not after the appointment terminates."  Lastly, citing once again to Probate Rule 307(e), the court explained that if Ms. Christian "wished to represent Ms. Glass during the appeals matter and seek compensation for her work," she was obligated to "seek court authority to continue as Ms. Glass's counsel."

This appeal followed.

---

[5] Probate Rule 305(c), Rule 307(e)'s predecessor, *see supra* note 1, which had been in effect when Ms. Christian litigated Ms. Glass's appeal, contained virtually the same text, simply reordered: "The appearance of counsel for the subject of an intervention proceeding shall terminate upon the disposition of the petition for which counsel's appearance was entered, unless otherwise ordered by the Court."

## II.    Analysis

The Probate Court determined it did not have the authority to grant Ms. Christian's Petition for Compensation because her court appointment had automatically terminated with the issuance of its ruling appointing a general guardian.  We review this ruling de novo.  *In re Est. of Green*, 896 A.2d 250, 252 (D.C. 2006) ("Although a trial court's decision to grant or deny a request for fees and costs is generally reviewed for abuse of discretion, the issue of whether a trial court possesses the statutory authority to award particular fees and costs is reviewed *de novo*." (citation omitted)).  For the reasons set forth below, we conclude that the Probate Court was mistaken about the scope and duration of Ms. Christian's appointment and its corresponding authority to grant compensation.

### A.    The Scope and Duration of Ms. Christian's Appointment

The Probate Court's order appointing Ms. Christian to represent Ms. Glass in the proceeding to determine whether a general guardian should be appointed expressly referenced both the Guardianship Act and the Probate Rules.  The order directed that "[c]ounsel shall perform the duties set forth in D.C. Code sec. 21-2033(b) and the duties set forth in Superior Court, Probate Division Rule 305 that are consistent with this statutory provision."  We turn then to those authorities.

D.C. Code § 21-2033(b)(1) mandates that "[t]he duty of counsel for the subject of a guardianship . . . proceeding is to represent zealously that individual's expressed wishes," which "[a]t a minimum" includes "[s]ecuring and presenting evidence and testimony and offering arguments to protect the rights of the subject of the guardianship . . . proceeding and further the subject of the guardianship's expressed wishes." The Probate Rules likewise impose a duty of zealous advocacy on court-appointed counsel. *See* Super. Ct. Prob. R. 307(a) (2022) ("Counsel for the subject or ward must zealously represent and advocate for . . . the subject's or ward's expressed wishes.").[6] Thus, a question presented in this appeal is whether counsel's duty of zealous advocacy encompasses representing their client on appeal. For several reasons, we hold that it does.

First, nothing in the Guardianship Act or the Probate Rules limits counsel's obligation to "zealously . . . offer[] arguments to protect the rights of the subject of the guardianship," D.C. Code § 21-2033(b)(1), or to "zealously represent and advocate for . . . the subject's or ward's expressed wishes," Super. Ct. Prob. R. 307(a), to proceedings in the Probate Court. Rather, this broad language naturally extends to briefing and oral argument (if any) in this court.

---

[6] The comments to the pre-August 2022 rules contained a similar mandate. Comment to Super. Ct. Prob. R. 305 (2004) ("[T]his Rule require[s] counsel to act as a zealous advocate for the subject.")

Second, counsel's obligation is further clarified by D.C. Rules of Professional Conduct, which broadly require attorneys to zealously advocate on their clients' behalf and forbid them from "[f]ail[ing] to seek the lawful objectives of a client through reasonably available means permitted by law and the disciplinary rules." D.C. R. Pro. Conduct 1.3(a)-(b); *see also* D.C. R. Pro. Conduct 1.3, Comment 9 ("Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client."); *In re Starnes*, 829 A.2d 488, 504 (D.C. 2003) ("A lawyer is said to violate Rule 1.3(b) . . . when he intentionally fails to seek his client's lawful objectives."). This court has imposed sanctions in a number of cases where counsel violated Rule 1.3 by failing to pursue a client's desired appeal. *See, e.g.*, *In re Murdter*, 131 A.3d 355, 359, 361 (D.C. 2016); *In re Askew*, 96 A.3d 52, 57, 62 (D.C. 2014); *In re Schlemmer*, 870 A.2d 76, 76-77, 81 (D.C. 2005); *In re Mance*, 869 A.2d 339, 342-43 (D.C. 2005). It would be odd indeed to interpret the duty of zealous advocacy under D.C. Code § 21-2033(b)(1) and Probate Rule 305 in a manner that conflicts with the duty of zealous advocacy and the obligation to carry out a client's wishes under the Rules of Professional Conduct.

Third, the duty of zealous advocacy under the Probate Rules must be interpreted consistently with other provisions of the rules and in particular with Rule 126(a), which expressly states that "[a]ny person who is aggrieved by a final

order or judgment of the Probate Division and who participated in the determination of that order or judgment may file an appeal to the District of Columbia Court of Appeals." *See* Super. Ct. Prob. R. 126(a) (2022).[7] This court does not maintain a panel of attorneys who may be appointed in appeals from the Probate Division (and, as noted above, we do not have authority to order payment from the Guardianship Fund, *see supra* notes 2 & 4). Accordingly, the right to appeal recognized by Rule 126(a), which Ms. Glass exercised in this case, would be significantly diminished, if not rendered meaningless, if an individual who had a right to court-appointed counsel in Probate Court did not have a continued right to the zealous representation of that same court-appointed counsel in this court.

Citing Super. Ct. Prob. R. 307(e), the Probate Court concluded, however, that Ms. Christian's representation of Ms. Glass automatically terminated when it ruled on the Petition for Appointment of a Guardian on July 23, 2020. Rule 307(e) provides that "[u]nless otherwise ordered by the court, the appearance of counsel for the subject or ward terminates upon the disposition of the petition for which

---

[7] This same language appeared in Rule 8(a) prior to the August 2022 amendments to the Probate Rules. *See supra* note 1.

counsel's appearance was entered."[8]  The Probate Court concluded that its ruling

constituted "the disposition of the petition."  We cannot agree.

The term "disposition" is not defined in either the Guardianship Act or the

Probate Rules.  In other contexts, however, this court has made clear that an appeal

is a fundamental part of a full judicial process.  *Cf. Howell v. U.S.*, 455 A.2d 1371,

1372 (D.C. 1983) ("A trial and an appeal of right are two components of the judicial

process.  A judgment . . . is not considered final until any appeal of right which is

filed has been resolved because the possibility of reversal endures until that point.").

We are particularly inclined to adopt a broad understanding of "disposition" in this

case in light of the directive within the Guardianship Act itself that its provisions be

"liberally construed and applied to promote its underlying purposes and policies."

D.C. Code § 21-2001(a).  Those purposes and policies include "[s]implify[ing] and

clarify[ing] the law concerning the affairs of . . . incapacitated individuals."  D.C.

Code § 21-2001(b).  As detailed above, such individuals are explicitly authorized to

appeal probate decisions.  *See* Super. Ct. Prob. R. 126(a).  Concluding that the

appointment of counsel on their behalf automatically ends with the Probate Court

---

[8] Because the language of this rule is functionally the same as that of its predecessor, *see supra* note 5, we discuss only the text of the current rule and see no need to engage with Ms. Christian's argument that the Probate Court should have applied the Probate Rules in effect at the time of Ms. Glass's appeal.

ruling would either impede persons deemed incapacitated from pursuing an appeal or, at the very least, significantly complicate the appeals process by necessitating the immediate *re*appointment of counsel to discern if the person deemed incapacitated wished to pursue an appeal and then, if they did, to take the requisite steps to do so.[9] Accordingly, construing the Guardianship Act liberally, we hold that an appeal of a guardianship proceeding is part and parcel of the "disposition" of that matter, because a Probate Court order cannot be considered final until such appeal has been decided, and because ensuring that the subjects of these proceedings have continued access to counsel throughout the appeals process clearly promotes the policies and procedures of the Act articulated in D.C. Code § 21-2001.[10]

---

[9] The Probate Court determined that the burden was on Ms. Christian to "seek court authority to continue as Ms. Glass's counsel." But we see no sensible reason to require counsel to make a request that by law must be granted, particularly when that will impose more work on counsel—work which will only be billed either to the ward's estate or the Guardianship Fund. *See infra* Part II.B.

[10] Although not expressly referenced by the Probate Court, we acknowledge that the Superior Court docket contains a line item indicating that Ms. Christian was dismissed as counsel on July 23, 2020. There is no evidence in the record that Ms. Christian was ever notified of this dismissal, however. Thus, Ms. Christian seemingly had no reason to believe that she did not remain Ms. Glass's attorney for the purposes of the appeal. Indeed, she had good reason to believe that her representation *did* continue with the court's blessing. Not only did she file a Notice of Appeal with the Superior Court on Ms. Glass's behalf, but she also filed a Motion to Waive Costs and Fees for Transcript Request—explicitly to "start the appeals process on behalf of Sally Glass"—and an Application to Proceed Without Prepayment of Costs, Fees, or Security. Both of these applications were granted by the Probate Court.

For the reasons stated above, we conclude that Ms. Christian was obligated by the Guardianship Act, the Probate Rules, and the D.C. Rules of Professional Conduct to see Ms. Glass's guardianship proceeding through its appeal and that her representation of Ms. Glass did not automatically terminate upon the Probate Court's ruling granting the petition to appoint a general guardian for Ms. Glass.[11]

### B. The Probate Court's Authority and Obligation to Consider Ms. Christian's Compensation Request

Having determined that Ms. Christian was obligated to appeal, at Ms. Glass's behest, the ruling appointing a general guardian, we also conclude that the Probate Court was authorized and obligated to consider Ms. Christian's request for reasonable payment for her legal services in this court.

---

[11] In its order denying Ms. Christian's Petition for Compensation, the Probate Court also makes note of the fact that Ms. Christian's second appointment, in September 2020, to represent Ms. Glass at the emergency status hearing, had terminated with the appointment of a successor general guardian on January 27, 2021. Any reliance by the Probate Court on this subsequent appointment and termination in its decision to deny Ms. Christian's petition would be inappropriate. Ms. Christian's initial appointment as counsel for Ms. Glass may not have automatically carried forward to all future proceedings in Probate Court regarding Ms. Glass. As already explained, however, Ms. Christian's appointment as counsel for Ms. Glass with respect to the initial guardianship proceeding obliged her to see *that* proceeding through an appeal if Ms. Glass so requested. In short, any subsequent Probate Court appointment had no bearing on the scope of Ms. Christian's first appointment.

D.C. Code § 21-2060(a) entitles attorneys to be paid for services rendered "in a guardianship proceeding . . . or in connection with a guardianship . . . arrangement." As this court has previously explained, the "in connection with" language of the Guardianship Act "is surrounded by 'absolutely no limiting language or restrictive terms,'" *In re Smith*, 138 A.3d 1181, 1185 (D.C. 2016) (quoting *In re Est. of Green*, 896 A.2d at 252), and it should therefore be construed broadly so long as "the compensation promote[s] the underlying purposes and policies of the Act," *id.* at 1188; *see also In re Weaks*, 224 A.3d 1028, 1034 (D.C. 2020) (approving an "expansive view of the kind of duties that are compensable under the Act"). In *Smith*, this court considered whether a guardian could seek compensation for work on appeals challenging denial of their compensation under the Guardianship Act. *In re Smith*, 138 A.3d at 1184. We concluded that a guardian could do so, reasoning that allowing such compensation promoted the underlying purposes and policies of the Guardianship Act by "clarifying the law" concerning guardianship, *id.* at 1186 (alteration omitted) (quoting D.C. Code § 21-2001(b)(2)), and by "benefit[ing] wards and prospective wards generally . . . by fostering the availability of guardians, who may be more willing to serve with the understanding that they can be compensated for their work . . . [,]" *id.*. By the same logic, Ms. Christian's appellate work—which, in contrast to the appellate work in *Smith* to obtain compensation, Ms. Christian was obligated to do on behalf of Ms. Glass, *see supra* Part I.A.—is

clearly "in connection with [Ms. Glass's] guardianship arrangement."

Given that Ms. Christian's services regarding the appeal of Ms. Glass's guardianship proceeding were undertaken "in connection with" the guardianship arrangement, they are presumptively compensable. The question that remains is whether the fees Ms. Christian requested are "reasonable." Super. Ct. Prob. R. 322(a) (authorizing "reasonable compensation"); *see also* Super. Ct. Prob. R. 322(b) (to allow for an assessment of reasonableness, requiring counsel to document in "a petition for compensation," among other details, the services rendered, the time spent, and the rate of compensation). This question is for the Probate Court to answer in the first instance, both because only the Superior Court has a fiduciary panel entitled to payment under the Guardianship Act, *see supra* notes 2 & 4, and because the reasonableness of court-appointed counsel's requested fees may require factual findings—a central province of the Superior Court, *see, e.g.*, *In re Robinson*, 216 A.3d 887, 890 (D.C. 2019) ("[T]he trial court is explicitly tasked with determining the reasonableness of compensation requests [in probate proceedings]."); *In re Est. of McDaniel*, 953 A.2d 1021, 1024 (D.C. 2008) ("[W]hen considering a request for counsel fees, the trial court must make specific findings of fact . . . .").

The Probate Court did not address the reasonableness of Ms. Christian's fee

request because it concluded that Ms. Christian was not entitled to compensation. Accordingly, remand of this matter is necessary.

### III.   Conclusion

For the reasons set forth above, the Probate Court's Order Denying Petition for Compensation is reversed and this matter is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*